## PABST BREWING COMPANY

### V.

## WALTER REEVES, ASSIGNEE.

*Insolvency—Banks—Assignments.*

1. In this State, the check of a bank depositor transfers to the payee the title to so much of the deposit as the check calls for, provided the depositor has funds to that amount on deposit, subject to his check at the time it is presented.

2. Under the rule that obtains in the State of New York, the giving of a check does not amount to an assignment of the amount called for by the check.

3. As to a check drawn in this State upon funds in a bank in another State, and payable therein, the laws thereof control.

4. Where a check is given, which does not transfer the legal title to the fund, and the maker makes a voluntary assignment before the same is presented, the title to the fund in bank passes to the assignee.

5. Such a custom as paying checks in part never existed. A check is intended not only to transfer a right to the amount named in it, but to serve the further purpose of affording evidence for the bank of the payment of such amount when the check is taken up.

[Opinion filed December 7, 1891.]

APPEAL from the County Court of La Salle County; the Hon. BENJAMIN F. LINCOLN, Judge, presiding.

Messrs. LACKNER & BUTZ, for appellant.

Mr. WALTER REEVES, *pro se.*

CARTWRIGHT, J. Pabst Brewing Co. filed in the County Court of La Salle County its petition against Walter Reeves, as assignee of James G. Wilson, to compel such assignee to pay over to petitioner the sum of $996.32 received by him from Chase National Bank of New York. Upon a hearing in the County Court the petition was dismissed and judgment

was rendered against petitioner for costs. The record contains no bill of exceptions, but shows that twenty days was allowed to appellant in which to present a bill of exceptions. From the averments of the petition as admitted by the answer and the statements of counsel for both parties, it appears that the facts upon which the rights of the parties depend are as follows:

On September 4, 1890, James G. Wilson, a banker, doing business at Streator, Illinois, was indebted to Pabst Brewing Company, a corporation of the State of Wisconsin, in the sum of $3,624.25, on deposit with Wilson as such banker. On September 6, 1890, Wilson received from Pabst Brewing Co. a letter dated September 4, 1890, directing him to remit to Chemical National Bank a check for $2,000, and charge the same to account of the Pabst Brewing Co., and in compliance with such direction Wilson on the same day drew his check on Chase National Bank of New York City for the sum of $2,000, payable to the order of W. J. Quinlan, cashier, and forwarded the same by mail to the Chemical National Bank of New York City. On September 8, 1890, Wilson executed a voluntary assignment to John C. Ames for the benefit of creditors. Said check was received in New York and presented to Chase National Bank by said Quinlan on September 9, 1890, at which time there was on deposit in Chase National Bank belonging to the estate of Wilson so assigned, the sum of $996.32 only. Payment of the check was refused, and the assignee subsequently received said sum of $996.32 as an asset of the estate of said James G. Wilson. Ames afterward resigned his trust, and Walter Reeves was appointed assignee.

The check was drawn for the sum of $2,000, and there was not at the time a fund subject to the check equal to that amount. There was no fund in the Chase National Bank such as was named in the check to be assigned or transferred by the making and delivery of the check. The rule in this State is, that the check of a depositor upon his banker transfers to the payee the title to so much of the deposit as the check calls for, provided the depositor has funds to that amount on deposit, subject to his check at the time it is pre-

sented; but in New York a different doctrine prevails. In the latter State the giving of a check does not amount to an assignment of the amount called for by the check. The check in this case was made payable in New York, and hence so far as the fund in the hands of the bank in that State was concerned, the law of New York was applicable and must control, that being the place of performance of the contract by the payment of the money. National Bank of America v. Indiana Banking Company, 114 Ill. 483. By that law the check did not operate to transfer title to any moneys in the Chase National Bank, but upon refusal to honor the check or to pay over the amount on deposit, the recourse of the check holder was against the drawer of the check for the amount of money named in it. Before the presentation of the check, a voluntary assignment duly executed, had vested in the assignee for the benefit of creditors all property, the title of which had not then passed from Wilson, and the title to this fund not having then been transferred by means of this check, the title passed to the assignee.

It is insisted, however, that inasmuch as this fund has come into the hands of the assignee in this State, the rights of the parties are to be determined by the law of this State as arising from an Illinois transaction, and that in any event, as between the assignee, occupying the same position as Wilson, and the holder of the check, the holder acquired a right to the deposit in Chase National Bank. The contention is that the check operated as an equitable assignment *pro tanto*, as between Wilson and appellant, of the amount then in the bank. As before stated, there was no fund in the bank such as was described in the check. The rule, as enforced in this State, that a check holder acquires a right in the deposit, is declared to be founded upon universal commercial custom, which recognizes this mode of changing the title of money in the hands of bankers from one person to another. That universal custom is to pay out the deposit on the presentation of checks in such sums as the checks call for, provided the drawer have sufficient on deposit, and upon such payment to receive and retain each check as a voucher for the sum named in it. Such

a custom as paying checks in part never existed.   Upon a partial payment, the check holder could not be called upon to surrender the check, and the bank would be without a voucher affording ready and certain means of showing the payment. The rule is based on commercial convenience, and any rule that would work such manifest inconvenience, should not be recognized.   A check is intended not only to transfer a right to the amount named in it, but to serve the further purpose of affording evidence for the bank of the payment of such amount when the check is taken up.   Under the rule in this State, the bank would not have been bound to pay over the fund on this check, and upon its refusal to do so the holder would only have a claim against the drawer.   We do not think that the holder of such a check has any equity superior to the general creditor.   The Supreme Court of the United States, in the case of Laclede Bank v. Shuler, 120 U. S. 515, say:  "It is not easy to see any valid reason why the assignment of an insolvent debtor for the equal benefit of all his creditors, of all his property, does not confer on those creditors an equity equal to that of the holder of an unpaid check upon his banker."   See also Covert v. Rhodes, Sup. Ct. Ohio, N. E. Rep., Vol. 27, p. 94.

The judgment of the County Court is affirmed.

*Judgment affirmed.*