### Serena M. Martin v. Joseph Fielding Martin et al.

1. APPEALS—*From County Courts in Probate Matters.*—An appeal may be taken to the Circuit Court from an order of a County Court, on a petition praying that an executor be directed to file an additional inventory and bond, finding the property in dispute to be the individual property of the executor, and not a part of the estate of his testator.

2. PARTIES—*What Amounts to Appearance, Personally, of Person Sued as Executor.*—A petition against an executor was filed and he was brought into court in his representative capacity. An amendment to the petition directed against the executor in his individual capacity was subsequently filed, and this amendment he answered individually, and an issue was formed. He defended the charge brought against him, was sworn as a witness in his own behalf, and put in a large amount of evidence to sustain his position. *Held,* that he could not avoid a judgment rendered against him personally, on the ground that he was in court only in his representative capacity.

3. GIFTS –*Inter Vivos and Causa Mortis—Requisites of.*—To constitute a valid gift *inter vivos,* possession and title must pass to and vest in the donee irrevocably, and the donor must part with all control of the

property. A gift *causa mortis* differs from a gift *inter vivos* only in that it is revocable on the recovery of the donor. In either case, if the gift does not take effect as an executed and completed transfer to the donee, either legal or equitable, during the life of the donor, it is a testimentary disposition, and good only when made by a valid will.

4. POSSESSION—*As Evidence of Ownership.*—As a general rule the possession of personal property is *prima facie* evidence of ownership, but such *prima facie* evidence may be easily overcome by proof of circumstances explaining the possession.

5. PROMISSORY NOTES—*Gifts of—Without Indorsement.*— A valid gift of a promissory note, payable to the order of the donor, may be made without indorsement of the note.

6. ASSIGNMENTS—*Of Notes and Mortgages.*—The owner of a note, and mortgage securing the same, may by a separate assignment vest the equitable title thereto in another, and when this is done, and the note, mortgage and assignment thereof are delivered to the equitable assignee, he may enforce collection in equity, for his own use and in his own name, by a foreclosure of the mortgage.

**Petition in Probate.**—Appeal from the Circuit Court of Kendall County; the Hon. CLARK W. UPTON, Judge, presiding. Heard in this court at the May term, 1896. Affirmed in part, reversed in part and remanded. Opinion filed December 9, 1896.

ROBERT L. TATHAM and HENRY S. WILCOX, attorneys for plaintiff in error.

HOPKINS, THATCHER & DOLPH and N. J. ALDRICH, attorneys for defendants in error.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was a proceeding in the County Court of Kendall County upon the petition of J. Fielding Martin, one of the defendants in error, against Serena M. Martin, Samuel Beers, and John O'Connor, executrix and executors of the last will and testament of Edward Martin, deceased.

The petition, which was duly sworn to, alleged that Edward Martin, late of Kendall county, Illinois, departed this life at Red Hook, Dutchess county, New York, on December 3, 1893, leaving a last will and testament, in which said Serena M. Martin, Samuel Beers and John O'Conner were named as executrix and executors.

The said will was duly admitted to probate in the said County Court of Kendall County, on the 14th of December, 1893. That the executors on March 5, 1894, filed in said County Court an incomplete inventory, and the petition avers that said executors or some of them knew it was an incomplete inventory. Further avers that the petitioner had reason to believe that the executors or some of them, knowingly withheld and assisted in secreting part of the goods, chattels and credits of the said testator from such inventory. The petition prays for a citation against the executors and that they may be required to give additional bond as such executors, and to produce certain notes, mortgages, bonds and securities mentioned in said petition (and which will hereafter be more particularly described), and that they also be required to file a supplemental or amended inventory, or show cause why the same should not be done. Upon this petition a citation issued against the executors and executrix as prayed. The petition was dated and filed April 24, 1894. The cause was continued from time to time until August 20, 1894, when the petitioner, Joseph F. Martin, filed an amendment to the petition by leave of the court, in which it was alleged that "said Serena M. Martin has in her hands and possession certain notes, bonds, mortgages and school bonds, etc., that were the property of said deceased in his lifetime, and as your petitioner is informed, claims the same as her own property, which, as your petitioner states and charges the fact to be, is not the case or fact." And he prays that she be required to bring into court all such papers, bonds, etc., to abide the further order of the court.

The executrix and executors answered the petition denying the allegations therein contained, and denying that as such executrix and executors they have in their possession, or under their control, any of the securities mentioned in the petition, and say they can not produce the same.

On a hearing of the cause the County Court found the securities in dispute to be the individual property of Serena M. Martin, and not a part of the estate of Edward Martin, deceased, but required the executors to file an additional in-

ventory only as to the sum of $40.25 cash, belonging to the estate, and which they had omitted to include in their original inventory.

From this order of the County Court the petitioner, J. Fielding Martin, prayed an appeal to the Circuit Court, which was duly allowed.

After the cause reached the Circuit Court, plaintiff in error by her solicitors filed her separate answer as follows:

" Answer of Serena M. Martin to the petition or application of J. F. Martin as amended.

Now comes Serena M. Martin and saving all right of exception to the petition of J. F. Martin as amended, and protesting that the court has no jurisdiction to try the issue sought to be made against her therein, or to try and determine in this proceeding the title to said property so far as her personal interest is concerned, says that she denies that she has in her possession any notes, bonds, mortgages, school bonds, or other property which was the property of the deceased in his lifetime, which she claims as her own, but she says that the property, or no portion thereof, described in said petition as amended, is the property of said estate, but is her individual property.

Wherefore she prays that said appeal be dismissed and that she be hence dismissed with her reasonable costs and charges," etc.

The court refused to dismiss the appeal and plaintiff in error excepted. Upon a hearing of the cause, the Circuit Court found against plaintiff in error, and held that all the securities in dispute belonged to and were a part of the estate of said Edward Martin, deceased, and that said Serena M. Martin, in her individual capacity, wrongfully retained the same and refused to deliver them to the executors of said deceased, and ordered her to turn over to said executors all of such securities, together with all moneys collected thereon, to be inventoried, accounted for, collected and distributed, under the direction of the County Court of said Kendall county, and that she have thirty days in which to comply with the order. Plaintiff in error excepted to this order

and moved the court to set aside the findings and orders aforesaid, and for a new trial.    The court denied the motion and plaintiff in error excepted.    She brings the cause to this court by writ of error, and enters upon the record thirty-four assignments of error.    We have not the time nor do we deem it necessary to discuss these assignments of error *seriatim* or in detail, but will consider such of them as we think have the most important bearing upon the correct determination of the questions involved.    The first point made and most strenuously urged by plaintiff in error is that the Circuit Court was without jurisdiction, because it is claimed the order of the County Court was not a final order, and therefore not appealable, and also on the ground that the plaintiff in error was never brought into court in her individual capacity, but only as an executrix of the will. We think both points must be determined against her.

Sec. 124, Chap. 3, Rev. Stat. (1 Starr & Curtis, 247), provides that "appeals shall be allowed from all judgments, orders or decrees of the County Court, in all matters arising under this act, to the Circuit Court in favor of any person who may consider himself aggrieved by any judgment, order or decree of such court."  *  *  * This provision was broad enough to allow the appeal to the Circuit Court in this case.

Upon the other point, while it is true that plaintiff in error was originally brought into court in her representative capacity, yet the amendment to the petition was directed against her personally and in her individual capacity, and this amendment she answered individually, whereby an issue was formed as to the question whether or not the securities in dispute belonged to her personally or to the estate of her testator.    She defended as to the charge brought against her, was sworn as a witness in her own behalf, and put in a large amount of evidence to sustain her individual claim to the property involved, and we are of the opinion it is now too late to insist that she was not in court in her individual capacity.    We think there was no error in the action of the trial court upon these questions.    We find no

serious error in the rulings of the court upon the admission or rejection of evidence, and we think the court held properly as to propositions of law governing the case. The real point of difficulty is to determine whether the trial court, upon the facts appearing in the evidence, was right in adjudging that as to none of the notes, bonds or securities in controversy was there such a delivery, such a completed gift within the rules of law governing such cases, as to vest the title in plaintiff in error. To this question we have given most earnest consideration, and will now proceed to its discussion.

The testator, Edward Martin, for many years before his death, resided on a farm at Red Hook, New York. He was a bachelor, upward of eighty years old when he died, which was December 3, 1893. Up to about fifteen years prior to that time his sister, Serena Martin, kept house for him.

When she was about nine years old, plaintiff in error was taken into the family of Edward Martin, and since the death of her aunt Serena Martin, kept house for the testator up to the time of his death. All the evidence shows that the deceased held plaintiff in error in very high esteem, treating her affectionately during his life, and the proofs are abundant, that he intended, out of his great wealth, to make ample provision for her comfortable support and maintenance after he should be called away. During his life he deeded to her the homestead at Red Hook, consisting of a farm, which one of the witnesses estimates to be worth about $20,000, but whether it produces any income or not does not clearly appear. In addition he gave her some personal property, but there is no satisfactory evidence of its value. By his will he directed that his estate should be divided into forty-two shares, giving two shares each to eighteen of his nephews and nieces, among whom were plaintiff in error and the petitioner, Joseph F. Martin, one of the defendants in error. By subsequent codicils he made some slight changes, not important to be considered in the determination of the questions involved in this case.

The inventory originally filed by the executors, showed the aggregate of Edward Martin's estate to amount to about the sum of $300,000, which being unsatisfactory to some of the legatees, inquiry and search were made for other property, resulting in the discovery that plaintiff in error had in her possession about $167,000 worth of securities which at one time had been the property of the deceased, and which she claimed had been given to her by Mr. Martin in his lifetime. To test the validity of this claim on her part, the petition in this proceeding was filed and the litigation already detailed was the result.

The securities in controversy may be divided into three classes, as follows:

First: The Phipps notes, being two promissory notes for $50,000 each, executed by Henry Phipps, Jr., payable to his own order and indorsed to the deceased, as part payment for the purchase of a tract of land called " Brighton Farm."

Second: Bonds of the Minneapolis Street Railway Company, to the amount of $10,000, and certain Illinois school bonds to the amount of $7,000.

Third : Patrick Smith notes....................$ 5,200
    John B. Howard notes.................. 4,000
    George A. Buck notes.................. 6,000
    Carsten Lankinan note.................. 4,000
    Catholic Bishop of Chicago.............. 16,000
     "   "    "  ............. 5,000
     "   "    "  ............. 6,000
     "   "    "  ............. 4,000

All secured by mortgages and aggregating........$50,200

For convenience of reference we will hereafter refer to the first class as " the Phipps notes; " to the second class as " the bonds," and to the third class as " the Illinois mortgages."

The claim of plaintiff in error to these securities depends upon the question as to whether or not there was a valid gift of them to her during the lifetime of the deceased,

Edward Martin; such a gift as can be upheld by the courts under the well established rules of law governing gifts *inter vivos.*

It will be unnecessary to go into any extended discussion of the authorities as to what will constitute a valid gift *inter vivos.* The decisions in our own Supreme Court are clear and explicit upon that subject. In the case of Telford v. Patton, 144 Ill. 611, it was held that "it is essential to a donation *inter vivos* that the gift be absolute and irrevocable, that the giver part with all present and future dominion over the property given; that there be a delivery of the thing given to the donee; that there be such a change of possession as to put it out of the power of the giver to repossess himself of the thing given. The delivery must be made with the intent to vest the title in the donee." And again, in Barnum v. Reed, 136 Ill. 388–398, our Supreme Court say: "The law requires the gift, whether direct or in trust, shall be established by clear proof, and that no uncertainty shall exist either as to the subject or object of the gift." And again: "*Donatio mortis causa* must be a completed and executed gift, the same as a gift *inter vivos.* If the gift does not take effect as an executed and completed transfer to the donee, either legal or equitable, during the life of the donor, it is a testamentary disposition, good only when made by a valid will. That is, the act or acts constituting the transaction must be consummated, and not remain incomplete or rest in mere intention, and this is the rule whether the gift is by delivery only or by the creation of a trust." And again "to constitute a valid gift *inter vivos,* possession and title must pass to and vent in the donee irrevocably. In this respect alone a gift *causa mortis* differs from that of a gift *inter vivos,* as in the case of the former it is revocable on the recovery of the donor. * * * The donor must part with all control of the property in order to make a valid gift. If he reserves any right or title the gift will be incomplete." This is a sufficient statement of the law applicable to the principal question involved in the case now under conisderation, and the rights of the

Martin v. Martin.

plaintiff in error must be governed by the rules thus laid down. Under these rules does the evidence establish a valid gift to plaintiff in error of the property in controversy? So far as the "Phipps notes" and the "bonds" are concerned, we entirely agree with the learned judge who tried this cause in the court below, that it does not. It is true that all these securities were found in the possession of plaintiff in error, and her counsel lay much stress upon this fact, as raising a presumption of ownership, but it is. equally true that all the securities belonging to Edward Martin's estate were also in her possession, as well those she claims as those she does not. While there is no doubt the general rule of law is that the possession of personal property is *prima facie* evidence of ownership, yet the *prima facie* evidence of ownership may be readily overcome by the proof of circumstances explaining the possession. In the state of the evidence in this case, we think but little importance should be attached to the mere fact, standing alone, that plaintiff in error was in the actual possession of the securities. We think, further, that notwithstanding the possession of plaintiff in error, under the circumstances shown by the evidence, when the fact was proven that the securities in question were at one time the property of deceased, then if plaintiff in error claimed them as a gift to her from the testator in his lifetime, she took the burden of establishing such gift by clear and satisfactory evidence.

The proofs upon which plaintiff in error seems to rely to establish a gift to her of the Phipps notes, is the fact that she rented, in her own name, a safety deposit box in the vaults of the Poughkeepsie National Bank, at Poughkeepsie, N. Y., in which the testator, from time to time, placed notes and securities, and among them the Phipps notes, with the statement that they were for her, and also statements to the president and cashier of the bank that all that was in her box was hers. To Mr. Beers, one of the executors of the will, the testator stated that he had put securities in Serena's (plaintiff in error's) box, "which was her property

and was no part of his estate, and that he wanted his executors to keep their hands off of it." Also, letters written by testator to plaintiff in error, particularly one of December 13, 1890, in which he says to her: "I have placed in your box in safe deposit vault at Poughkeepsie National Bank, certain bonds, securities, deeds, bills of sale, etc., which I have given to you and delivered to you, and I write this that there may be no doubt of the fact that everything in your box is yours absolutely. Judge Taylor, of Poughkeepsie, and George Cornwell, cashier of the Poughkeepsie National Bank, have knowledge of my intentions as above. Your affectionate uncle, Edw'd Martin."

From all the evidence it is very clear that the deceased intended that plaintiff in error should have the securities he thus placed in her box, and there can be no doubt that if, by placing the securities in her safety deposit box, he intended thereby to make a gift thereof to her, to take effect *in presenti*, and divesting himself of all future control thereof or right therein, this would have been a complete and valid gift *inter vivos*. The court below so held in substance. But unfortunately for the case of plaintiff in error, there is much evidence tending to show that the testator did not intend to surrender entire control of this property, and did not understand that he had done so. The able judge who tried this cause delivered an opinion in the case, in which the evidence on this subject is reviewed, and perhaps it is better set forth there than the writer hereof could state it, and from that opinion we quote as follows:

"It will be noticed that the evidence shows that decedent, shortly before his death (and only a few weeks prior thereto) in a conversation with one of the executors, Mr. Beers, stated that in the rat-proof box, so-called, would be found an inventory of his entire estate, and what property he owned, which would enable the executors to make inventory thereof. Among the items there inventoried are the Phipps notes—without note or comment of any disposition thereof to any one. These notes were taken by Edward Martin, decedent, to Chicago, and payment of the semi-annual in-

terest thereon made to him personally from time to time as the same fell due, the last payment of interest being made to decedent on the 23d of June, 1893. Edward Martin then had the manual possession of these notes at that time in Chicago, and claimed to control the same and the amount due thereon. Not only that he controlled in fact, the time and method of the future payment thereof, and the rate of interest to be paid thereon, but entered into a contract of extension for the payment thereof in his own name, under his seal with the maker and payee thereof, which contract of extension and change of time and terms of payment of both principal and interest was by the decedent, Edward Martin, signed and acknowledged in due form of law before a notary public in New York, on the 17th day of November, 1893, but sixteen days before his death. It further appears that a duplicate extension of the same import was executed by the decedent, Martin, dated June 23, 1893, and acknowledged on the 25th of September, 1893, and upon these different occasions during the summer and autumn before his death and up to about two weeks prior thereto decedent had possession of, contracted and claimed the right, and in fact exercised control of the notes, and the mortgages securing the same, as his own individual property and estate.   *   *   *   There is nothing upon the notes or mortgages to show that Edward Martin had ever parted with possession or title thereto, and every presumption arising from business precedents would be, that as the notes were indorsed in blank by the payee, the original notes must have been in decedent's possession and produced, before a contract for the extension of this large sum of money would have been consummated. We further find from the evidence, that decedent, on the 17th of November, upon an unexecuted contract or copy thereof for that extension, in his own hand, in pencil memorandum, made this entry: ' I have retained a copy of this for use at my desk, as the duly executed agreement, received this morning, will be deposited in my safe vault box, distant from Red Hook, November 17, 1893.' " The learned judge does not profess to review all the evidence upon which he

based his conclusions as to the Phipps notes, but there is other evidence tending strongly to sustain his view. It will be noticed that in his diary entry of October 11, 1892, which is shown to be in the handwriting of decedent, he speaks of putting the two Phipps notes of $50,000 each in Serena M. Martin's box in safety deposit vault together with other securities, but he says not a word as to his reasons for putting them there. The same is true as to the entry of May 23, 1893. In the entry of June 14, 1893, he speaks of taking the Phipps notes from the box to take to Chicago, so that he certainly had them there when the agreement for an extension was made. It thus appears from the evidence that whatever the decedent may have said or written concerning a gift of the Phipps notes to plaintiff in error, his acts are at variance with any idea of a completed and valid gift *inter vivos* within the rules of law governing such gifts.

His dominion over and control of the notes was exercised as fully and freely after they were placed in Miss Martin's box as before. After the death of Edward Martin there was found in the safety deposit box of plaintiff in error a sealed letter written by deceased, and addressed to himself, but upon the outside of which were the words: " With directions to Serena M. Martin to open this after my death." This letter was dated at Red Hook, May 13, 1893, nearly seven months before testator's death. In this letter Mr. Martin tells plaintiff in error that she will find in her box certain securities, among which he mentions $30,000 of bonds and the Phipps notes, and tells her that these securities are her private property, and are not to be inventoried as a part of his estate, and then gives her advice as to the care she should take of her property, etc. But he concludes his letter as follows: " Some of the bonds ($30,000) named above as in your box, have matured and been collected, and assignments of other notes and mortgages than those above named will be added to your personal estate from time to time, at my convenience, and placed in your box in the safe deposit vault, and everything in your box is yours."

Mr. Martin evidently thought that he could put securities

into his niece's safety deposit box, collect the same as they became due, change securities from time to time, as he might find convenient, manage and control them during his lifetime, and then, because he had told her and others, that whatever was in her box was hers, and was not to be considered as a part of his estate, that at his death she could retain and hold all such securities as then might be found in the box. A careful examination of the evidence satisfies us that this was his intention and expectation. He supposed, like many another man under like circumstances, that he had made ample provision for the object of his bounty, but he was simply mistaken. The law does not permit a man to own and control his property during his lifetime, and make a valid disposition of it at his death, except by means of a duly executed will. The law points out the mode in which testamentary dispositions of property may be made, and has wisely excluded any other. In this case we think the evidence shows that the decedent had access to the deposit box of plaintiff in error as freely as to his own; that he handled the securities therein and controlled them as he pleased; and by the letter left to be opened after his death, he tried to consummate a gift of the contents to his niece, which being an attempt to avoid the operation of the statute of wills, did not become effective. Without further discussion of that question, we hold that the trial court was right in finding that no valid gift of the Phipps notes was made by decedent to plaintiff in error, but they must be held and treated as a part of his estate.

What has been said with regard to the Phipps notes, is equally applicable to the bonds. But in addition thereto we have the diary entry of June 20, 1890, as follows: "Went to Poughkeepsie with Serena M. Martin. She rented box. I put ten street railroad bonds, $1,000 each, in her box, being a delivery to Serena of the bonds now, but her ownership of them to be simultaneous with my death." By the personal direction of decedent these bonds had been so registered as to be paid to Edward Martin and after his death to Serena M. Martin, and the interest was paid to him semi-annually

up to his death. We think this action with regard to the
bonds was in harmony with that concerning the Phipps
notes, and that as to both, it was but a mere attempt to make
a testamentary disposition of them without the forms of law
necessary to accomplish that purpose, and was therefore
void. We hold that the action of the court in regard to
the bonds was proper and it will be affirmed.

This brings us to the third class of securities, which we
have above designated as "the Illinois mortgages," and
which amount in the aggregate to $50,200. As to these
notes and mortgages we have arrived at the conclusion that
plaintiff in error's claim to them can properly be sustained
and upheld for the reasons which we will proceed to give.

In the first place, these securities are shown by the evi-
dence to have been in the possession of plaintiff in error for
some time before Edward Martin's death. According to
the testimony of the witnesses, which is in no way contra-
dicted, these papers, consisting of the notes, mortgages, and
duly executed assignments of the mortgages, pinned thereto,
were done up in a piece of curtain calico, with a strap
around them which fastened with a buckle. Plaintiff in
error kept them in a closet or clothes press in the room oc-
pied by herself, which closet or clothes press was locked and
she carried the key. They were not in her safety deposit
box nor in the possession of Edward Martin, nor among his
papers at the time of his death nor for some time prior
thereto. About two weeks before his death, deceased asked
plaintiff in error for these papers, saying he had neglected
to attend to something in connection with them, and that
he had to take them and attend to them. The witness,
Margaret J. Martin, swears she saw plaintiff in error take
the package out of her closet and hand it to the decedent.
She further swears that on the same day she saw decedent
hand the package back to plaintiff in error telling her that
they were hers; that he had been called away and had not
time to attend to it then. The witness further testifies
that plaintiff in error showed her the papers in the package,
and enumerates the notes and mortgages which we are now.

considering. She testifies also that she saw plaintiff in error take a package out of the cupboard which she unlocked with a key that she, plaintiff in error, carried in her pocket. The witness, Elizabeth H. Martin, testifies that about April 17, 1893, decedent handed her a package to give to plaintiff in error on her return, she being then absent. That the package was four or five inches in thickness and about the length of legal envelopes, and told her the package contained valuable papers, which were valuable to plaintiff in error and to no one else. This package the witness testifies she gave to plaintiff in error on her return. While there is no direct evidence as to what this package contained, yet we think the evidence shows it was the same package referred to by Margaret J. Martin and in connection with the other evidence it may be regarded as having some weight in determining the question of delivery and the intent of the testator in relation thereto.

It will be observed that the possession of plaintiff in error as to these particular securities called Illinois mortgages was quite different from her possession of the other assets of the estate. With the knowledge and acquiescence of decedent, she had them in her own possession, locked up in a closet in her own room, to which she carried the key, and when he wanted them he asked her for them, and then returned the papers to her, being particular to state to her in the presence of a witness that they were hers. What he wanted to do to the papers does not appear, but the actions of the parties are entirely consistent with the claim of the plaintiff in error that he had made a gift of them to her before that time. We think the fact of her possession under the circumstances is entitled to a good deal of weight, and tends strongly to show that her contention as to the gift of those securities to her is correct. But in addition to this, decedent had taken pains to execute formal assignments of these mortgages to plaintiff in error duly acknowledged before a proper officer, and we think the evidence shows that these assignments pinned to the mortgages were in the package done up in the calico and in the possession of

plaintiff in error at the time of decedent's death, and for some time before. These assignments purported to assign the notes as well as the mortgages given to secure the same. Then again, upon the inventory book, where decedent had entered these securities, there appears as to all of them except one note of George A. Buck for $3,000, indorsed in the handwriting of decedent against each one separately, the words "assigned to S. M. Martin" who, it will be conceded, was plaintiff in error. So that not only had plaintiff in error the possession of these securities, but she had formal assignment of them from the testator, with the notation thereof in his inventory book, while there is no evidence tending to show that he ever had any possession or control of them after the time when, but two weeks before his death, he handed them back to her with the statement that they were hers. We think all these facts taken together are sufficient to establish a valid and completed gift of these Illinois mortgages, within the rules of law above stated. It is true, the notes themselves were not indorsed by the testator and it may be that this was the thing which he thought rendered the matter incomplete, and which he had in mind to do when he called for the package two weeks before his death, but we do not regard it as being essential to a complete gift that the notes should have been actually indorsed. What was done was sufficient to vest in plaintiff a valid equitable title to the notes, although not the legal title. We do not regard the case of Barnum v. Reed, *supra*, as being in conflict with this view. In that case the court say: " There can be no pretense that Mrs. Davis transferred the legal title of the notes and certificates of deposit to Barton. That could be done only by indorsement."

But the court were then considering the question as to whether or not Mrs. Davis had constituted Barton a trustee for the benefit of Mrs. Reed and were not passing upon the effect, had Mrs. Davis delivered the notes and certificates of deposit to Mrs. Reed as a gift without indorsement. There is nothing in the case to show that the court intended

to hold that the equitable title to a note and mortgage could not be vested in a donor, by a gift of the same and a delivery thereof, without indorsement by the donor. We have no doubt that, in equity, the owner of a note and mortgage securing the same, may by a separate assignment vest the equitable title thereto in another, and when this is done, and the note, mortgage and assignment thereof are delivered to the equitable assignee, he may enforce the collection in equity for his own use and in his own name, by a foreclosure of the mortgage. Barrett et al. v. Hinckley, 124 Ill. 32–41.

The courts of this state very early recognized the right of the equitable assignee of a promissory note to collect the same by suit in the name of the payee for the use of the assignee. Ranson v. Jones, 1 Scam. 291.

In the latter case it was said: "Where there has been a transfer of a bond or instrument, without a regular assignment to authorize the assignee to institute a suit in his own name, courts will always permit the use of the name of the person to whom it is made payable, without an express power so to do.   *   *   *   Indeed courts are bound to protect the interest of the holder."

In the case of Grover, Adm'r, v. Grover, 24 Pick. 261, it was expressly held that a valid gift may be made, *inter vivos*, of a promissory note payable to the order of the donor, without indorsement by him or other writing, and that the donee might, upon the death of the donor, maintain an action against the maker of such note in the name of the donor's administrator, even against the consent of the latter. And it was also held that the gift of a chose in action, provided no claims of creditors interfere to affect its validity, ought to stand on the same footing as a sale. We think the principles announced in that case should govern in the one now under consideration, and our conclusion is, that by the acts of the testator the equitable title to the securities called the Illinois mortgages passed to and vested in plaintiff in error, and such equitable title should be respected and protected by the courts. While courts of probate in

this State have but limited equity powers, yet in such matters as are involved in this proceeding, we think they should be governed by equitable principles, and in this view we think the court below erred in holding that plaintiff in error was not entitled to hold the securities we are now considering, and in ordering them to be turned over to the executors to be inventoried, accounted for and distributed as a part of the estate of Edward Martin, deceased.

As to so much of the order of the Circuit Court as relates to the Phipps notes and the bonds, it will be affirmed, but as to so much of said order as relates to the Illinois mortgages, amounting to $50,200, it will be reversed, and the cause remanded with directions to the Circuit Court to enter an order in accordance with the foregoing findings, and holding the Illinois mortgages to be the individual property of plaintiff in error and no part of the estate of Edward Martin, deceased.

Reversed in part and remanded with directions.