## Belle Boyter v. The Estate of Jane Atkinson, Deceased.

1. SERVICES—*By Adopted Children—Remuneration, When Not Presumed.*—Where a girl ten years of age is sent into a family by a charitable institution, under a written agreement to be taught the elements of an English education, and furnished with proper meat, drink, washing, clothing and lodging, and all other necessaries fit and convenient for a girl of her age, until she arrives at the age of eighteen years, and to be taught the art of housekeeping, etc., if she chooses to remain in the family after she arrives at the age of eighteen, without requiring an express promise from that member of such family from whom she seeks to recover, to pay her for such services, the presumption is that she did not contemplate being paid for the same, and she can not enforce a claim for such services against the estate of such member.

Boyter v. Estate of Jane Atkinson.

2. LIMITATIONS—*What is Not Sufficient to Remove the Bar of the Statute.*—Where a girl ten years of age is placed by a charitable institution in a family, under a written agreement to remain until she arrives at the age of eighteen years, and she chooses to remain in such family after she arrives at such age, without an express agreement to be paid for her services, the presumption is that she did not contemplate being paid for the same, and letters received by her from a member of the family showing that such member had become greatly attached to her, but containing no such unequivocal promise as would constitute a valid agreement to pay a barred indebtedness, are not sufficient to remove the bar of the statute.

**Claim in Probate,** for services rendered. Appeal fron the Circuit Court of Shelby County; the Hon. WILLIAM M. FARMER, Judge, presiding. Heard in this court at the May term, 1901. Affirmed. Opinion filed September 11, 1901.

ROBERT CLOWRY CHAPMAN, attorney for appellant; E. A. RICHARDSON and JAMES JAY SHERIDAN, of counsel.

WALTER C. HEADEN, attorney for appellee.

MR. PRESIDING JUSTICE BURROUGHS delivered the opinion of the court.

Appellant, at the age of ten years, being an inmate of the Chicago Home for the Friendless under the name of Isabella Sharkey, was taken therefrom October 19, 1867, by Jane Atkinson, an unmarried woman of the age of forty-two, residing with her father upon his farm in the town of Todd's Point, in Shelby county, Illinois, to her father's farm, under the following written agreement:

"This indenture, made this 19th day of October, A. D. 1867, between the Chicago Home for the Friendless, party of the first part, and Miss Atkinson of Todd's Point, in the county of Shelby, State of Illinois, party of the second part, witnesseth, that the said party of the first part hath and doth hereby bind unto the said party of the second part, Isabella Sharkey, born in Chicago, October 1, '57, to live in the family of the said party of the second part until she arrives at the age of eighteen years, to be taught the elementary English education.

And the said party of the second part covenants and agrees to and with the said party of the first part, to take and keep the said Isabella in her family until the said Isa-

bella arrives at the age of eighteen years, aforesaid, furnish her with proper meat, drink, washing, clothing and lodging, and all other necessaries fit and convenient for a girl of her age and condition, to teach her the trade or art of housekeeping, as aforesaid, and also cause the said Isabella to be kept at school at least three months of each year, and in all respects to rear the said Isabella in such a way that she may be useful to herself and the community.

And it is further agreed by and between the parties, that if at any time during the apprenticeship of the said Isabella the said party of the first part shall be dissatisfied with the manner in which the said Isabella is reared, or if the said Isabella shall be cruelly or improperly treated, or if for any cause whatever, the said party of the second part shall be or become unfitted to rear the said Isabella in a proper manner, then and in that case the said party of the first part shall have a right to rescind this contract and the same shall be held as null and void; and shall have the right to demand and receive from the said party of the second part the said Isabella, who shall in no wise be detained from the party of the first part aforesaid.

And the said party of the second part further agrees with the said party of the first part, that at the expiration of the term of this indenture she will give the said Isabella a new Bible and two new suits of clothes, suitable to her condition in life.

In testimony whereof, the said party of the first part has caused the seal of the said corporation to be hereto affixed, and the said party of the second part has set his hand and seal the day and year above stated."

When appellant was taken into the Atkinson family, it was composed of Jane, her father, mother, two brothers, a hired man and a maid servant, and appellant became one of them and was treated as the other female members thereof, performed similar housework, and sometimes, like them, she milked the cows and fed the calves by hand. Jane did the managing for the family, and her father paid all the bills. There is no evidence in the record but that appellant received all she was promised by the written agreement, at any rate she makes no claim for such, and after arriving at the age of eighteen years, without any expressed promise to be paid for her services, she continued to reside and work in the Atkinson family as she had before, until June 27,

1881, when she went to Chicago and was there married, in 1883, to one Boyer. After she had gone to Chicago, Jane wrote from Todd's Point to appellant a number of very affectionate letters, which were put in evidence by appellant, and are referred to in this record as exhibits A, B, C, D, E, F, G, H and I. A bears date July 11, 1881, and among other things states : " Father and me want you to come back with us and stay with me; I tell you, Belle, I miss her, * * * I know you earned more than you ever got but she knows I have plenty and now, dear Belle, you shall be well recompensed by me some day."

B is dated February 11, 1882, and in it is stated, among other things: " You answer other letters soon, why not mine; I will make you a recompense."

C is dated February 2, 1882, and it states, among other things : " You must not think that I have forgotten you; I haven't any thing suitable just now to send you, but now Belle I will make you a handsome present before I leave this world and I sometimes think that won't be long."

D is dated May 26, 1882, and, among other things, states : " I want you to make your home here and as I have told you, you shall have most of what I have some day."

E is dated March 15, 1894, and after telling of the home matters, contains the following :

" Belle, times are very hard here and I know they must be with you, if Mr. Boyer has been reduced in his wages again, so I inclose ten dollars for a birthday present, as I think your birthday is the 24th of this month; I have never seen such hard times since I can remember. * * * I would have sent you more but I am hard up as I can be; I don't know where my taxes is coming from; I can't get a bit of rent; you shall have more when I die. You earned it and deserve it; write soon; love to your mother."

F is dated August, 1883, and after jollying Belle about getting married, says Jane will come to Chicago to see her and then states : " Belle, I shall think of you when I am up there as I haven't anything suitable just now."

G is dated February 1, 1893, and thanks Belle for the stockings she sent her and closes, " From your best friend on earth."

H is dated ———— and closes, " I am yours afect. sister as ever."

I is dated July 27, 1885, and closes, " I am your afect. sister."

Wages of hired girls upon farms in the town of Todd's Point are from $1.50 to $2 per week.

After appellant left the Atkinson farm on June 27, 1881, Jane continued to reside there until she died, intestate, August 8, 1896, and her father died in 1885.

Letters of administration were granted upon the estate of Jane by the County Court of Shelby County soon after she died, and on December 6, 1897, appellant filed with the clerk of that court her claim against Jane's estate for services performed at her request from October 19, 1867, to June 27, 1881.

That claim was heard by the County Court without a jury by consent of parties, and resulted in a finding and judgment against appellant, and she took the claim by appeal to the Circuit Court, and there by leave of court amended it so as to show it was " for work, labor and services from October 19, 1867, to June 27, 1881, $10,000," to which was added the affidavit of appellant that said amended claim " is just, after allowing all the just credits, and is now due and unpaid." The affidavit was sworn to by appellant, November 13, 1900.

The claim, as amended, was heard in the Circuit Court before a jury, and after appellant had closed her evidence which showed the foregoing facts, counsel for the estate moved the court to exclude the evidence and instruct the jury to return a verdict in favor of the estate, which was allowed over the objections of the appellant, who preserved an exception, and in obedience to the instruction, the jury returned the verdict directed. Appellant moved for a new trial, which being denied, took an exception, and judgment being entered against her in bar of her claim and for costs, she prayed and was allowed an appeal to this court, and here insists that the Circuit Court improperly excluded the evidence from the jury; improperly instructed them to

return a verdict in favor of the estate, and improperly denied appellant's motion for a new trial, for which reasons she prays that its judgment should be reversed and the claim remanded for a new hearing.

It seems clear to us that from the time appellant went to the Atkinson farm in October, 1867, up to the time she arrived at the age of eighteen, she was there under the express terms of the written agreement of October 19, 1867, quoted in the former part of the opinion, and during that time she was treated by Jane and her father as a member of the family, and each became greatly attached to the other, so that appellant was looked upon by Jane as her daughter or sister. And as appellant chose to remain in the family five years longer after becoming eighteen years old, without requiring any express promise from Jane, so far as the evidence shows, to pay her for the work she did there during that time, we are satisfied that she was quite content to continue there as a member of the family without further pay than the support she received, and therefore we will presume that she did not contemplate being paid wages by Jane for such work as she performed. Collar v. Patterson, 137 Ill. 403; Martin v. Martin, 89 Ill. App. 147; Graves, Adm'r, v. Safford, 41 Ill. App. 659; and Bassett, Adm'r, v. Noble, 15 Ill. App. 360.

It is insisted by counsel for appellant that the statements contained in Jane's letters to appellant would have warranted the jury in concluding that Jane promised appellant to pay her for the services which she rendered in the Atkinson family while she was there from October 19, 1867, to June 27, 1881, but we can not concur in that view, because the only conclusion which can be drawn from all those letters contained is, that Jane had become greatly attached to appellant while they were both members of her father's family, and that she fully appreciated the kind services which appellant rendered while there, and understood the small compensation she received therefor; and in order to make appellant understand that Jane fully appreciated her services, loved appellant as her child or sister and would

treat her as such, Jane promised to leave appellant the most of her (Jane's) property when she died.

And those letters, we think, contain no such definite, clear and unequivocal promise as would sufficiently constitute a binding new promise to revive a debt barred by the statute of limitations, even if the evidence, with all the legitimate intendments deducible therefrom, showed an indebtedness between appellant and Jane for the work, labor and services claimed by appellant. Carroll et al. v. Forsyth, 69 Ill. 127, and Wachter v. Albee, Adm'x, 80 Ill. 47.

That appellant at the inception of this claim, was of opinion that she was simply a member of the Atkinson family from October 19, 1867, to June 19, 1881, and not there as Jane's servant for pay, appears from the record in this case, for in her original claim, which was filed with the clerk of the County Court on December 6, 1897, in the form of a petition to the County Court, appears this statement: "that on October 19, 1867, she (appellant) was taken from the Home for the Friendless in Chicago by Jane Atkinson, and became and was thereafter known as a member of the family of said Jane Atkinson until June 27, 1881, and bore the name of Belle Atkinson until she was married, August 8, 1883." Which petition appears by the record to have been signed and sworn to by appellant on December 4, 1897.

The court, we think, properly excluded the evidence from the jury and directed a verdict for the estate because that offered by appellant failed to show, and did not tend to show that she performed work, labor and services for Jane Atkinson from October 19, 1867, to June 27, 1881, for pay as claimed, but on the contrary, it established the fact that such work, labor and services were performed by her as a member of the Atkinson family, and for which appellant did not, before or at the time she performed the same, expect to be paid by Jane other than what she received as such member of the family.

The motion for a new trial was also properly overruled, and the judgment of the Circuit Court will be affirmed.