## John J. Cook, Administrator, Defendant in Error, v. Denslow Lewis, Plaintiff in Error.

### Gen. No. 16,731.

1. ASSUMPSIT—*money had and received.* An action for money had and received is an equitable action, and may be maintained whenever the defendant has obtained money belonging to the plaintiff which, in equity and good conscience, he has no right to retain.

2. BANKS—*death of depositor revokes check.* The payee of an unaccepted check has no right subsequent to the death of the depositor to collect the amount of his check from the bank, but must present his claim to the Probate Court; and if he does collect his check after the death of the depositor he is liable to the administrator.

3. EXECUTORS AND ADMINISTRATORS—*administrator may maintain action of money had and received.* Where a bank depositor gives his physician a check, telling him to keep the balance remaining after the payment of funeral expenses to apply on his account for professional services, the physician collecting his check from the bank after the death of the maker, and paying the funeral expenses, is liable to the administrator, in an action of money had and received, for the balance.

Error to the Municipal Court of Chicago; the Hon. FRANK CROWE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

CHURCH & McMURDY, for plaintiff in error.

ANDREW L. WINTERS, for defendant in error; GEORGE M. STEVENS, of counsel.

MR. JUSTICE FITCH delivered the opinion of the court.

The defendant in error, hereinafter called plaintiff, as administrator of the estate of Marcus Koch, deceased, sued the plaintiff in error, hereinafter called the defendant, in the Municipal Court for money had and received. On a trial before the court without a jury, there was a finding and judgment for the plaintiff

for $226.75, and defendant has sued out this writ of error.

Marcus Koch died at two o'clock A. M. on October 30, 1909. Ten days before his death, he gave the defendant, his attending physician, a check on a bank in Matteson, Illinois, for $392.50, which exhausted all of his bank account, except thirty-five cents. Seven hours after the death of Koch, the doctor presented the check for payment at the Matteson bank, and told the bank that Koch was dead. The bank paid the check. The doctor admitted that he received this money for the purpose of paying funeral expenses, including a grave, headstone, the undertaker's bill, etc.; but after paying such expenses, amounting to $165.75, he refused to pay the remainder to the plaintiff, claiming it was due him for professional services rendered to the deceased. The trial court, in giving judgment for such remainder, took the position that it was immaterial whether there was any consideration for the check or not, for the reason, as we understand the record, that under the present statute on negotiable instruments, the delivery of the check to the defendant did not operate as an assignment *pro tanto* of any funds in the bank, and that the maker's death amounted to a revocation of the authority given to the defendant by the check to collect the money from the bank.

Counsel for defendant contend, in substance, as follows: Prior to the enactment of the present statute on negotiable instruments, the giving of a check for a valuable consideration operated as an assignment *pro tanto* of the maker's funds in the bank; that by the delivery of such check to the payee, the latter acquired a vested interest in such fund, and that the maker's death, before acceptance by the bank, did not in anywise affect such vested interest; that section 188 of the Negotiable Instruments Act did not change this rule, but was intended merely as a protection to the bank. To these contentions, counsel for plaintiff re-

plies, that the rule in Illinois has been entirely changed by the section of the statute above mentioned; that upon the death of a depositor, the title to the fund in the bank, except so far as the same has been set apart by the bank for the payment of accepted checks, passes *eo instanti* to his administrator or executor, and must be administered by him under the direction of the Probate Court; that the payee of an unaccepted check has now, therefore, no right, subsequent to the death of the depositor, to collect the amount of his check from the bank, but must present his claim to the Probate Court; that if he does collect from the bank, upon such a check presented after the death of the maker, he is liable to the administrator for the amount so received in an action for money had and received.

An action for money had and received is an equitable action, and may be maintained whenever the defendant has obtained money belonging to the plaintiff which, in equity and good conscience, he has no right to retain. First National Bank v. Gatton, 172 Ill. 625; Wilson v. Turner, 164 Ill. 398. In the latter case the court, quoting from Allen v. Stenger, 74 Ill. 119, said: "And this kind of equitable action to recover back money which ought not, in justice, to be kept, is very beneficial, and therefore much encouraged. It lies only for money which, *ex aequo et bono*, the defendant ought to refund. (Chitty on Contracts, 474.) When, therefore, according to this rule, one person obtains the money of another which it is inequitable or unjust for him to retain, the person entitled to it may maintain an action for money had and received for its recovery. * * * The scope of the action has been enlarged until it embraces a great variety of cases, the usual test being, does the money, in justice, belong to the plaintiff, and has the defendant received the money, and should he, in justice and right, return it to the plaintiff." Tested by this rule, if the money received from the bank by the defendant was property belonging to the plaintiff,

which, in equity and good conscience, the defendant has no right to retain, then the plaintiff is entitled to judgment. If, on the other hand, the money so received does not belong to the plaintiff, or, in the event that it is determined that the legal title to the fund was in the plaintiff, if the defendant should not, "in justice and right," be required to turn it over to the plaintiff, then in either of the latter cases, the judgment should be for the defendant.

Prior to the enactment of the Negotiable Instruments Act of 1907, the rule in Illinois was that the drawing and delivery of a check by a depositor upon a fund in the bank was, in effect, an assignment to the holder of the check of so much of the fund as the check called for. Munn v. Burch, 25 Ill. 35; Union Nat. Bank v. Oceana County Bank, 80 Ill. 212; Niblack v. Park Nat. Bank, 169 Ill. 517; Gage Hotel Co. v. Union Nat. Bank, 171 Ill. 531. To this rule, however, an apparent exception or qualification was recognized in cases where the check was a mere gift from the drawer to the payee. In such cases, it was held that the gift was incomplete until the check was paid or accepted by the bank upon which it was drawn; that until so paid or accepted, the check was subject to revocation, and was revoked by the death of the drawer before payment or acceptance by the bank. Martin v. Martin, 89 Ill. App. 147. The exception was based upon the principles applicable to promissory notes executed without consideration and intended as gifts, which were held to be mere promises to make a gift, and therefore not executed until the notes were paid. Martin v. Martin, *supra;* Richardson v. Richardson, 148 Ill. 563.

In those jurisdictions where a check does not operate as an assignment *pro tanto* of the fund on deposit until acceptance by the bank, it has been held that a check is revoked by the death of the drawer before such acceptance. Nat. Com. Bank v. Miller, 77 Ala. 168; Second Nat. Bank v. Williams, 13 Mich. 282; Saylor v.

Bushong, 100 Pa. St. 23, 27; Fordred Seaman's Savings Bank, 10 Abb. Pr. (N. S.) 425; Simmons v. Savings Society, 31 Ohio St. 457.

In 2 Daniel on Negotiable Instruments, 4th Ed., Sec. 1618b, and a note to that section, the author assails the authority and reasoning of such cases. After stating that many authorities hold the view above stated, he attributes its origin to the English case of Tate v. Hilbert, 2 Vesey, Jr., 118, decided in 1793, and points out that the facts of that case were that the check there in question was not given for a valuable consideration, but was intended as a *donatio mortis causa.* He concedes that "if the check were a gift to the payee, and the banker knew that fact, the death of the drawer would operate as a revocation of the banker's authority to pay it. In such a case the authority of the donee to collect, as well as that of the banker to pay, is not coupled with such an interest as to continue them in force." (*Ibid,* 1618b, note.) But he contends that where the check is given to the payee for a valuable consideration, the authority of the payee to collect the amount of the check from the bank is a power coupled with an interest, and therefore irrevocable by the death of the drawer. (*Ibid.* 1618b.) In this view, he is apparently supported by the reasoning used in Raesser v. Nat. Exch. Bank, 112 Wis. 591, 598 (which does not, however, directly decide the point), and in Lewis v. International Bank, 13 Mo. App. 202, 208.

Other text writers support the view taken by the courts of Alabama, Michigan, Pennsylvania, New York and Ohio in the cases cited above from those states, upon the well settled principle that the title to a depositor's bank balance vests in his legal representatives at the instant of his death, and that therefore the depositor's unaccepted check, in jurisdictions where such a check is not considered as an assignment *pro tanto,* is revoked (or rendered ineffective) by his death, as against a fund which he then no longer owns nor

controls. (Zane on Banks and Banking, Sec. 138; 2 Bolles, Modern Law of Banking, 621.) On the same principle Mr. Justice Cartwright, in Pabst Brewing Co. v. Reeves, 42 Ill. App. 154, held that under the law of New York, a check drawn upon a New York bank did not operate to transfer the title to the drawer's funds in that bank, so as to prevent the title to such fund passing to an assignee for the benefit of creditors, under a voluntary assignment made before the acceptance of such check by the bank.

From an examination of such authorities as we have been able to find in those states in which a check is not regarded as an assignment, we are inclined to think that the weight of authority in those states upon this question favors the rule that, as between the drawer and payee of a check which has not been presented to and accepted by the bank, the death of the drawer (with notice thereof to the bank) deprives the payee of the right to collect from the bank, whether the check be given for a valuable consideration or not. This is certainly true if the check is intended as a mere gift (Simmons v. Savings Society, *supra;* Second National Bank v. Williams, *supra;* Martin v. Martin, *supra*), though the Supreme Court of California holds otherwise. Pullen v. Placer Co. Bank, 138 Cal. 169.

Section 188 of the Negotiable Instruments Act of 1907 provides: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." From what has been stated above, it would seem to be evident that the legislature intended, by this section of the Act, to change the rule in Illinois so as to make it conform to the rule which obtains in most of the other states and in England. We are of the opinion that such was and is its effect; and in the absence of any authoritative decision upon this question by our own Supreme Court, we are disposed to follow

the current of authority in those states where the rule has been the same as stated in said section 188. We think that the cases which hold that the power given by a check to collect from the bank is a "power coupled with an interest" *in the fund,* and yet, at the same time, hold that the check is not of itself an assignment of any part of such fund, are inconsistent and illogical. If a check does not operate as an assignment of a fund, or any part thereof, we do not see how it can be said to create any vested interest therein, and if the interest of the payee created by a check is not a vested interest *in the fund,* then the power given by the check is not "coupled with an interest" in such fund. Hunt v. Rousmanier's Admrs., 8 Wheat. 174; Gilbert v. Holmes, 64 Ill. 548, 560. We therefore hold that the check to Dr. Lewis did not vest in him any title to the fund in the bank; that the title thereto vested in the plaintiff upon the death of Marcus Koch; and that the money paid by the bank to Dr. Lewis, after knowledge of the death of Marcus Koch, belonged to the plaintiff, as administrator.

There remains, then, only the further question whether the plaintiff has shown not only his legal title to the money received by the defendant, but also that the defendant has no right, in justice and in equity, to retain the same. The defendant offered to prove that more than he received on the check was due him from the deceased for services, and that when he was given the check by Koch, the latter told him to keep any balance remaining after the payment of funeral expenses to apply on his account for such services; but the trial court refused to admit or consider such evidence. If the cause of action for the recovery of the money received by the defendant had arisen during the lifetime of the deceased, the defendant would not, in such case, be required to pay over the money to the administrator and then probate his claim against the estate for services, but could set-off his claim against his indebt-

edness to the estate. Printy v. Cahill, 235 Ill. 534. The cause of action here involved, however, did not accrue to the deceased. It did not arise until after his death, and accrued directly to the administrator. In such case, to allow the defendant to set off a debt due from the intestate in his lifetime against a claim of the administrator arising after the death of the intestate, "would interfere with the proper order of distribution. It would enable the debtor of an insolvent estate to obtain an unjust advantage." Newhall v. Turney, 14 Ill. 338, 340. It would also virtually give to the payee of a check the authority of an administrator to collect, without appointment and without bond, for the sole benefit of one creditor, viz: himself.

For the reasons indicated, the judgment of the Municipal Court will be affirmed.

*Affirmed.*