# CASES DETERMINED

## IN THE

# SUPREME COURT OF ARKANSAS

---

THE MERCHANTS & PLANTERS BANK OF CAMDEN *v.* THE
NEW FIRST NATIONAL BANK OF COLUMBUS, OHIO.

### Opinion delivered December 14, 1914.

1. BILLS AND NOTES—CERTIFIED CHECK—RIGHT TO STOP PAYMENT.—After a bank has certified a check, the drawer can not stop payment on it, and the mere fact that the drawer has notified the bank not to pay the check, does not release the bank from its liability thereon.

2. BILLS AND NOTES—CERTIFIED CHECK—TIME OF PAYMENT.—A check was drawn payable to order and dated ahead. Before the date of payment, the drawer had the check certified by the drawee bank. *Held,* the word "certified," as used by the bank on the check, clearly and unequivocally imported an absolute promise by the bank to pay the check, when presented to it on the day named.

3. BILLS AND NOTES—CERTIFIED CHECK—CHECK PAYABLE AT FUTURE DATE—RIGHTS OF HOLDER IN GOOD FAITH.—A check is a negotiable instrument, and a holder of it in good faith and without any notice of any infirmity of title is entitled to maintain an action upon it against the maker, although the latter has a good defense as against the payee; and the fact that a check is payable at a future date, does not change the rule.

4. BILLS AND NOTES—CERTIFIED CHECK—RIGHTS OF HOLDER.—A bank which has received a certified check for deposit, and has credited the depositor with the amount of it, is a *bona fide* holder, and may enforce payment of it as against the drawee bank.

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; affirmed.

#### STATEMENT BY THE COURT.

Walter P. and John E. Ritchie instituted this action in the chancery court against John J. Lentz, A. C. Stuart,

State National Bank of Texarkana, Arkansas, and Merchants & Planters Bank of Camden, Arkansas, to enjoin them from paying a check drawn by W. P. Ritchie against the Merchants & Planters Bank for $2,000, payable to the order of John J. Lentz, and certified by the bank.

The action was commenced on the 23d day of February, 1912, and subsequently the New First National Bank, of Columbus, Ohio, learning of the pendency of the suit, appeared and was made a party defendant. It filed its answer and cross complaint against W. P. Ritchie and the Merchants & Planters Bank of Camden, alleging that it was a *bona fide* purchaser for value in the usual course of business, and asked judgment for the amount of the check.

The facts, briefly stated, are as follows: On July 1, 1911, W. P. and John E. Ritchie entered into a written contract whereby Lentz agreed to sell them certain bonds and stocks of the Texarkana Telephone Company for the sum of $30,000; and the contract further provided that the Ritchies should deposit with A. C. Stuart a certified check on the Merchants & Planters Bank, of Camden, Arkansas, for $2,000, payable to John J. Lentz, for the faithful performance of the contract. It was also provided that should the Ritchies fail to carry out their part of the contract on or before the 1st day of November, 1911, the said Stuart was authorized and directed to deliver the check to Lentz as a forfeiture and in full settlement of all damages sustained by him for a breach of the contract. The check is as follows:

"Camden, Ark., November 1, 1911.

"Pay to John J. Lentz, or order, two thousand ($2,000) dollars.

(Signed) "W. P. Ritchie.

"Certified for $2,000. 6-29-1911. A. C. Powell, Cashier.

"Protested for nonpayment March 22. Louis Baiurlein, Notary Public."

On February 23, 1912, Lentz demanded the check from Stuart and the holder notified the Ritchies that he

was going to deliver it to Lentz, and did deliver it to him on that date. That night Lentz left for his home in Columbus, Ohio, and on the morning of February 26, 1912, he presented the check to the New First National Bank of Columbus, which, because it was a certified check, received it as cash and placed the amount to the credit of Lentz. In due course the check was presented on March 22, 1912, to the Merchants & Planters Bank of Camden for payment. Payment was refused by the bank on the ground that it had been enjoined by the chancery court in the present action.

The evidence on the part of the New First National Bank of Columbus shows that it had no notice of any infirmity, if any, in the check until it received notice of protest some time after March 5, 1912. In the meantime Lentz had checked out of the bank all of his deposit and his account at the close of business on March 4, 1912, showed an overdraft of $872.67. The chancellor made the following finding of fact:

"Plaintiffs on June 29, 1911, issued and caused to be certified by the defendants, the Merchants & Planters Bank of Camden, Arkansas, their check, dated the 1st of November, 1911, payable to the order of John J. Lentz, one of the defendants, for the sum of $2,000 as earnest money on a contract of purchase to be performed November 1, 1911, and to be forfeited to the said John J. Lentz in the event that plaintiff failed to comply with said contract: that said check was delivered to A. G. Stuart, one of the defendants, as trustee, subject to the conditions of the contract; that said contract was not executed, and on February 23, 1912, the said A. G. Stuart delivered said check to the defendant, John J. Lentz and at that time, the said John J. Lentz had not complied with his part of the contract and was not entitled to receive the check; that on the same day a restraining order enjoining the payment of said check was issued and served on the defendants, the State National Bank, and the Merchants & Planters Bank of Camden, Arkansas, but no service thereof was had on the other defendants."

It is conceded that the finding of fact in this respect is not against the preponderance of the evidence.

The chancellor also found that the New First National Bank of Columbus, Ohio, was an innocent purchaser for value in the ordinary course of business and was entitled to recover from the Merchants & Planters Bank of Camden, Arkansas, the amount of the check. A decree was accordingly entered by the chancellor in favor of the New First National Bank of Columbus, Ohio, against the Merchants & Planters Bank of Camden, Arkansas, and the latter bank has duly prosecuted an appeal to this court.

*W. H. Arnold* and *Will Steel,* for appellant.

1. If the so-called certified check involved here had not been post-dated, the question would be whether its negotiation several months after the date would put the purchaser on inquiry as to defense or the ownership thereof. 7 Enc. of L. 852; 101 Ark. 543; 71 N. Y. 435, 27 Am. Rep. 70; 7 Johns. 70. But the check here is an irregular act, and is not in fact a check, but a bill of exchange. Certification of a post-dated check before its date is an irregular act and puts the purchaser upon inquiry. 13 N. Y. Sup. Ct. 76; 6 Am. Dig., Cent. Ed., § 404; 52 Barb. (N. Y.) 592.

Where a depositor dates a check on a certain day, but inserts a future date of payment, the instrument is not a check, because not payable on demand, but is a bill of exchange payable at some future date. 5 Ohio St. 13; 64 Am. Dec. 632; 8 N. Y. 190; 57 N. Y. 126.

Since the check was overdue when deposited in the bank in Ohio, the bank was not a holder in due course, and the check was open to any defense which would have been good against Lentz. 7 Enc. of L. 952; 7 Am. Dig., Cent. Ed., Bills and Notes, § 21; 64 Am. Dec. 634, and cases cited.

2. If a purchaser at all, was the appellee bank an innocent purchaser? 7 Am. Dig., Cent. Ed., § 887; 2 Fed. Rep. 609; 3 Hun, 147; Am. Dig. 1908A, "Banks and Banking," par. 145B; Am. Dig., Cent. Ed., par. 899, § J.

*Webber & Webber,* for appellee.

1.   By certifying a check to be good, the bank assumes an unconditional obligation to the holder, to pay it on demand. Norton, Bills and Notes, 395-398. The certification implies that the check is drawn on sufficient funds in the drawee's possession, that they have been set apart for payment, and will be thus applied when presented for payment. 5 Cyc. 540, 541; 19 U. S. (L. Ed.) 1008, 1019. As between the holder and the drawer, when a certified check has been delivered, the maker's power over it is gone; and the drawer or endorser of a certified check can not stop payment or revoke it, after delivery, by notice to the drawee not to pay.

A bank that has received a certified check for deposit is a *bona fide* holder, and may enforce payment, notwithstanding it may have received notice, before payment to the depositor, that the check was fraudulently obtained by him. 20 L. R. A. (N. S.) 290, and note; 43 Barb. 392.

2.   There is no merit in the contention that the check was in fact not a check, but a bill of exchange, and, therefore, past due when negotiated. A check may be payable at a future date without ceasing to be a check. 10 Am. St. Rep. 681; 7 Cyc. 531; *Id.* 868; *Id.* 853; 32 Am. Dec. 530; 114 Pac. 668; 71 S. E. 946; 39 Ua. 92; 80 Am. Dec. 507; 69 Am. Dec. 678; 67 Barb. 24; 86 N. Y. Supp. 857.

HART, J., (after stating the facts).   (1)   In a case note to 16 Am. & Eng. Ann. Cases, at page 213, it is stated that the rule seems to be well settled that after a bank has certified a check, the drawer can not stop payment on it, and that the mere fact that the drawer has notified the bank not to pay the check does not release the bank from its liability thereon. A number of cases from various States are cited to support the rule.

In the case of Merchants' Bank v. State Bank, 10 Wallace, U. S. 604, Mr. Justice Swayne, speaking for the court, at page 647, said:

"By the law merchant of this country the certificate of the bank that a check is good is equivalent to acceptance. It implies that the check is drawn upon sufficient

funds in the hands of the drawee, that they have been set apart for its satisfaction, and that they shall be so applied whenever the check is presented for payment. It is an undertaking that the check is good then and shall continue good, and this agreement is as binding on the bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume. The object of certifying a check, as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the bank. It is available also to him for all the purposes of money. Thus it continues to perform its important functions until in the course of business it goes back to the bank for redemption and is extinguished by payment.

"It can not be doubted that the certifying bank intended these consequences, and it is liable accordingly. To hold otherwise would render these important securities only a snare and delusion.

"A bank incurs no greater risk in certifying a check than in giving a certificate of deposit. In well-regulated banks, the practice is at once to charge the check to the account of the drawer, to credit it in a certified check account, and when the check is paid to debit that account with the amount. Nothing can be simpler or safer than this process.

"The practice of certifying checks has grown out of the business needs of the country. They enable the holder to keep or convey the amount specified with safety. They enable persons not well acquainted to deal promptly with each other, and they avoid the delay and risks of receiving, counting, and passing from hand to hand large sums of money.

"It is computed by a competent authority that the average daily amount of such checks in use in the city of New York, throughout the year, is not less than one hundred millions of dollars.

"We could hardly inflict a severer blow upon the commerce and business of the country than by throwing a doubt upon their validity."

This is conceded to be the correct rule, by counsel for the defendant, but it is contended by them, in the first place, that the notation on the margin of the check is not equivalent to a certification by the bank, and that if it were, because the check was payable at a future time, it became to all intents and purposes an inland bill of exchange, and some authorities are cited by them in support of the latter contention.

(2) In regard to the first contention made by counsel for the defendant it may be said that the check was made payable on November 1, 1911, and on the 29th day of June the drawer of the check caused this notation to be made on it by the cashier of the bank: "Certified for $2,000. 6/29/1911. B. C. Powell." On the 1st day of July, 1911, the check was delivered to A. C. Stuart to be by him and in turn delivered to John J. Lentz in compliance with the terms of the contract on that day executed between Lentz and the Ritchies. When Ritchie presented the check to the bank for certification it was manifest that he intended to negotiate it and when certified by the bank the certification became an acknowledgment by the bank that Ritchie would have funds on deposit which the bank would pay over to the holder of the check upon its being presented after November 1, 1911. The word "certify" clearly meant an absolute promise on the part of the bank to pay the check when presented to it on the day named. The language clearly and unequivocally imported an absolute promise to pay by the bank.

(3) In regard to the second contention of counsel for the defendant, it may be said that in the case of *Bill v. Stewart*, 31 N. E. 386, the Supreme Court of Massachusetts said that a check is a negotiable instrument and a holder of it in good faith and without notice of any infirmity of title is entitled to maintain an action upon it against the maker, although the latter has a good defense as against the payee. The court further held that the

fact that it is postponed does not take the case out of the rule.

In the case of *Champion* v. *Gordon,* 70 Pa. St. 474, 10 Am. Rep. 681, the same contention was made as is made by counsel for defendant in the present case. Mr. Justice Sharswood, who was not only a very able and learned judge, but also a law writer of great renown delivered the opinion of the court, and said:

"The law merchant recognizes clearly a distinction, in many respects between checks on banks and ordinary bills of exchange. One difference is that, when the former are payable on demand or at sight, no days of grace are allowed. The same rule holds when they are postdated. Byles on Bills, 14, note; 3 Kent's Com. 104, note; In re *Brown,* 2 Story's Rep. 502; *Daniels* v. *Kyle,* 1 Kelly, 304; *Mohawk Bank* v. *Broderick,* 10 Wend. 304; *Salter* v. *Burt,* 20 *Id.* 205; *Andrew* v. *Blachly,* 11 Ohio, St. 89; *Westminster Bank* v. *Wheaton,* 4 R. I. 30. Whether it applies also to checks payable at a future day named, is a question upon which there is a contrariety of opinion and decision. Mr. Justice Story says: 'The argument pressed is that checks are always and properly payable on demand, and that, when payable at a future time, they become to all intents and purposes inland bills of exchange. But I am not, by any means, prepared to admit the validity or force of this distinction; and no case has been cited which, in my judgment, satisfactorily establishes it. A check is not less a check, because it is postdated, and thereby becomes, in effect, payable at a future and different time from that on which it is drawn or issued. This is sufficiently apparent from the case of *Allen* v. *Keeves,* 1 East. 435.' "

The learned justice further said: "If such an order drawn upon a bank, payable at a future day named in it, must be considered as an inland bill of exchange, and not a check, then the payee or holder has the right to present it at once for acceptance, protest it at once for nonacceptance, and sue the drawer immediately. Should it be accepted, however, the funds of the drawer in the bank

would necessarily be thereby tied up, until the day of payment. All the objects of directing payment at a future day would thus be frustrated. What the drawer undertakes is, that on a day named he will have the amount of the check to his credit in the bank. In the meantime he wants the full and free use of his entire deposit. It is not denied that a post-dated check can not be presented for acceptance. That is, by implication, payable on a future day. Why, then, is a check expressly so made payable, to stand on a different ground?"

Lentz, the holder of the check in this instance, resided in Columbus, Ohio. On the 26th day of February, 1912, he presented the check to the New First National Bank of that place, with which bank he transacted his banking business. The bank received the check as cash because it was certified and placed the amount to the credit of Lentz. It was then forwarded for collection in due course of business and payment was refused by the Merchants & Planters Bank of Camden because it had been enjoined from making payment by the chancery court and the check was, therefore, protested for non-payment.

Before the New First National Bank of Columbus had learned of this fact, Lentz had checked out of the bank all of his deposit and his account on March 4, 1912, showed an overdraft of $872.67. The testimony of the bank in this respect is not contradicted, and it is, therefore, shown to be an innocent purchaser for value in the usual course of business.

The fact that Lentz deposited the check with a bank at Columbus, Ohio, instead of collecting it from the bank on which it was drawn, is a matter of no moment as tending to put the bank on notice that the check was subject to any infirmity. This is so because Lentz resided in Columbus, Ohio, and deposited the check with a bank there with which he usually transacted his business. The bank there being a *bona fide* holder for value in the usual course of business, was not affected by any fraud in the transaction between the Ritchies and Lentz. *Bothell* v.

*Fletcher,* 94 Ark. 100; *Exchange National Bank* v. *Little,* 110 Ark. 263; *Harbison* v. *Hammons,* 113 Ark. 120, 167 S. W. (Ark.) 849; *Blake* v. *Hamilton Dime Savings Bank Co.,* 20 L. R. A. (N. S.) 290, 16 Am. & Eng. Ann. Cases, 210.

(4) In the last mentioned case the Supreme Court of Ohio held: The object of certifying a check is to enable the holder to use it as money. The drawer or indorser of a certified check can not, after its delivery, revoke it or stop payment upon it by notice to the drawee not to pay, and a bank that has received a certified check for deposit and has credited the depositor with the amount of it, is a *bona fide* holder and may enforce payment of it, notwithstanding the fact that it may, before payment to the depositor, have received notice that the check was fraudulently obtained by the depositor.''

It follows that the decree must be affirmed.