24        APPELLATE COURTS OF ILLINOIS.

Sarantopoulos v. Mid-City Trust & Savings Bank, 222 Ill. App. 24.

Tom Sarantopoulos, trading as Sarantopoulos Bros., Appellee, v. Mid-City Trust & Savings Bank, Appellant.

### Gen. No. 26,321.

1. BANKS AND BANKING—*what effect of second notice to stop payment on check.* Where a bank depositor caused to be written to the bank a letter, entirely in typewriting, including the signature, requesting the bank to stop payment on two checks, such depositor did not, by subsequently writing a personally signed stop-payment letter as to one of the checks, waive his rights under the first letter.

2. BANKS AND BANKING—*what effect of drawer's refusal to sign second notice to stop payment on check.* When a bank certified a check after receiving a notice from the drawer, signed in typewriting, to stop payment thereon, the rights of the drawer were not affected by his refusal to personally sign the stop-payment letter after such certification.

3. BANKS AND BANKING—*what notice to stop payment of check sufficient.* Under the Negotiable Instruments Act, any act of the drawer of a check which conveys to the bank, before certification, definite instruction to stop payment, is sufficient for that payment.

4. BANKS AND BANKING—*when typewritten notice to stop payment on check sufficient.* A letter written entirely in typewriting, including the signature, is sufficient as a notice to a bank to stop payment of a check.

Appeal from the Municipal Court of Chicago; the Hon. CHARLES A. WILLIAMS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1920. Affirmed. Opinion filed October 4, 1921.

GUSTAV E. BEERLY, for appellant.

McINERNEY & POWER, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This is an appeal from a judgment for $1,500 against the defendant bank rendered by the municipal court of Chicago in an action of the first class tried before the court without a jury.

Plaintiff, under the name of Sarantopoulos Bros., was a depositor in and had a checking account with the defendant bank, and on January 8, 1920, he issued his two checks, Nos. 2028 and 2029, each for the sum of $1,500, drawn on the bank and payable to the order of Psimoulis & Company. The controversy concerns check No. 2029. On January 17, 1920, plaintiff caused to be written to the bank and in due course of mail the bank received the following letter or notice, dated January 17, 1920: "Kindly stop payment on checks No. 2028, 2029, dated January 8, 20, to Psimoulis & Co., $1,500 apiece. Yours truly, Sarantopoulos Bros., 910 W. Randolph St., Chicago." The letter, including the signature thereto, "Sarantopoulos Bros.," was in typewriting. On January 24, 1920, said check, No. 2029, was for the first time presented to the bank by the payee thereof, and the bank, disregarding said letter or notice, certified the check, returned it to Psimoulis & Company, and deducted the amount from plaintiff's account. On January 27, 1920, three days after the check had been certified but before the bank had paid the check, Edward J. Lawler, cashier of the bank, requested plaintiff and George Psimoulis to come to the bank for the purpose, as Lawler testified, of trying to settle matters. Lawler further testified, in substance, that at this interview he told plaintiff that the bank could not stop payment on a check where the signature to the order to do so was only in typewriting, and requested plaintiff to sign his name to said stop payment letter of January 17, saying that if plaintiff did so Psimoulis would return said check, No. 2029, *to the bank* and authorize the cancellation of the bank's *certification* thereto, but that plaintiff refused to sign his name to said letter, and that Psimoulis took said check away and the same was afterwards presented by him to the bank for payment and paid. Psimoulis testified, in substance, that at this interview

he told plaintiff that if he (plaintiff) would sign his name to said letter, he (Psimoulis) would return the check *to the bank,* but that plaintiff refused to sign his name to said letter. Plaintiff testified, in substance, that at said interview nothing was said by either Lawler or Psimoulis to the effect that, if plaintiff would sign his name to said letter, he (plaintiff) would get said check back into his own possession; and that, on the contrary, Lawler said to him (plaintiff): "You've got to give me money; George Psimoulis is suing me." Lawler further testified that when the check was presented for certification he as cashier, together with one of the bank's tellers, signed said certification or acceptance on the face of the check; that at that time he had plaintiff's letter or notice of January 17, before him and read it; that "notwithstanding that notice," he certified the check "because of the signature being in typewriting;" and that he as cashier had never stopped payment of a check "on a typewritten order of that kind." Lawler further testified that at said interview of January 27, 1920, he talked with plaintiff concerning the other check, No. 2028, mentioned in plaintiff's letter of January 17, and told him that if he did not sign with his own signature an order to stop the payment of said check he might have to pay that check; that subsequently, on February 2, 1920, plaintiff sent a written order to the bank, signed with his own signature, directing it to "stop payment on check No. 2028, dated Jan. 8, 20, $1,500"; and that when said check was afterwards presented to the bank payment was refused because of said stop-payment order. Defendant did not introduce any evidence of any rules or custom in existence among the banks in Chicago relative to letters or written orders stopping payment of checks. Carrie Walsh, plaintiff's bookkeeper and cashier, testified, in substance, that on January 17, 1920, plaintiff told her to write said letter or notice of that date to the bank

to stop payment on said checks; that she wrote said letter out on a typewriting machine and mailed the letter on the same day; that plaintiff was not in the habit of signing letters written out by her and that she wrote the signature to said letter in typewriting as was her usual custom. Plaintiff further testified that the bank had refused to pay him the $1,500 which it had deducted from his account when said check No. 2029 was certified. The present action was commenced on February 13, 1920, plaintiff claiming that the bank was indebted to him in said sum of $1,500. At the conclusion of the trial the court found the issues against the bank, assessed plaintiff's damages at said sum of $1,500 and entered the judgment appealed from.

It is here contended, in substance, by counsel for the bank, as it was in the trial court (1) that plaintiff's letter of January 17, 1920, wherein the bank was directed to stop payment on the check in question, No. 2029, as well as on the other check, No. 2028, was not a sufficient notice for that purpose, because the letter or notice was not personally signed by the depositor who had signed the checks, but only in his name in typewriting, and (2) that, even if the notice of January 17, 1920, was sufficient, when plaintiff on February 2, 1920, at the request of the cashier of the bank, gave the bank the additional notice signed with his own signature to stop payment on said other check, No. 2028, such action amounted to a waiver or abandonment of plaintiff's rights under and by virtue of the letter or notice of January 17, 1920. We do not think there is any merit in counsel's second contention.

As to the first contention, counsel, in his printed argument here filed, seems to think that his point is somewhat strengthened by the fact that plaintiff, at the interview on January 27, 1920, three days after said check, No. 2029, was certified by the bank, refused the bank's request to attach his pen and ink signature

to said typewritten letter or notice of January 17. We cannot agree with counsel. The rights or liabilities of all parties were fixed when the check was certified. We think that the sole question for our determination is, was plaintiff's said letter or notice of January 17, signed in typewriting, a sufficient notice to the bank not to pay the check in question? Prior to the passage of the Negotiable Instruments Act, in force July 1, 1907, it was the law of this State that a check upon delivery operated as an assignment *pro tanto* of the fund upon which it was drawn, as between the drawer and payee. (*National Bank of America v. National Bank of Illinois,* 164 Ill. 503, 504; *Wyman v. Fort Dearborn Nat. Bank,* 181 Ill. 279, 283.) But, by section 188 of said Act (Cahill's Ill. St. ch. 98, ¶ 110), the law appears to have been changed in this particular. (*Cook v. Lewis,* 172 Ill. App. 518, 523; *Ozburn v. Corn Exchange Nat. Bank,* 208 Ill. App. 155, 157.) Section 188 provides: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." In the *Ozburn* case, *supra,* it is said:

"Since the passage of the Negotiable Instruments Act in 1907 [Cahill's Ill. St. ch. 98, ¶ 21 *et seq.*], the holder of a check has no lien upon the money in the bank upon which it is drawn unless the check has been accepted or certified. The bank is the agent and the depositor the principal, and the latter has the right seasonably to countermand any order upon the agent which he, the principal, may have issued. In *Cook v. Lewis,* 172 Ill. App. 518, the court said: 'It would seem to be evident that the legislature intended, by this section of the act (referring to section 188), to change the rule in Illinois so as to make it conform to the rule which obtains in most of the other states and in England.' This statute evidently makes the depositor the principal and the banker his agent."

In the *Ozburn* case, *supra,* it was also decided that

a telegram to stop payment of a check, which was received previous to the certification thereof, was a sufficient notice to the bank to countermand the payment of the check (p. 158). It would seem to follow that any act of the drawer of a check, which conveys to the bank before certification definite instruction to stop payment of the check, would be sufficient for the purpose. In the present case the instruction was in writing and was seasonable and definite.

Our conclusion is that the judgment of the municipal court was right and should be affirmed and it is so ordered.

*Affirmed.*

Barnes and Morrill, JJ., concur.