**Kimbell Trust & Savings Bank, Complainant Below, Appellee, v. William O. Olsen, Defendant Below, Appellee, on appeal of George Max Adams and Arlington Heights State Bank, Appellants.**

### Gen. No. 30,370.

1. Interpleader—*right of bank certifying check to maintain bill against drawer, payee and transferee.* Where a bank certified a check given by the vendee to the vendor of certain real estate, it could not thereafter maintain a bill of interpleader against such parties on the ground that the drawer had served notice on the bank to stop payment of the check for the reason that the vendor had procured the same by fraud, regardless of whether the certification was at the request of the drawer or of the holder of the check.

2. Fraud and deceit—*necessity of proof of falsity of representations and intent to deceive.* In an action for fraud and deceit in procuring a sale, the purchaser refusing to rescind, it must be proven that the party making the representations knew they were false when made, and made them with the intention to deceive.

3. Interpleader—*sufficiency of evidence to show fraud in procuring issuance of check on complainant bank.* Evidence in a suit upon a bill of interpleader by a bank against the drawer, the payee and the transferee of a check drawn against funds of the drawer on deposit in such bank, held not to show that the drawing of the check was procured by the fraud of the payee upon the drawer, and to show that the transferee was a bona fide holder for a valuable consideration.

Appeal by defendants from the Circuit Court of Cook county; the Hon. Ira Ryner, Judge, presiding. Heard in the first division

of this court for the first district at the October term, 1925.  Reversed and remanded with directions.  Opinion filed March 2, 1926.

H. J. THAL, for appellants.

RATHJE, WESEMAN, HINCKLEY & BARNARD, for certain appellees; and BULKLEY, MORE & TALLMADGE, for W. O. Olsen, appellee.

MR. JUSTICE MCSURELY delivered the opinion of the court.

This is an appeal by defendants, Arlington Heights State Bank and George Max Adam, from a decree entered upon a bill of interpleader.  The Kimbell Trust & Savings Bank by its bill alleged that it was in possession of funds amounting to $10,421.26, which had theretofore been deposited with it by W. O. Olsen to the credit of his checking account; that on February 28, 1923, Olsen drew his check upon the complainant for this sum, which check complainant certified; that George Max Adam had the check in his possession and claimed to be the lawful holder and owner thereof; that Olsen had served complainant with written notice stopping payment and stating that the check had been obtained by Adam by fraud.  Complainant averred that it was willing to pay the money to such person as would be lawfully entitled to the same.  Defendant Olsen answered, admitting the allegations of the bill and alleging that Adam had obtained the check through misrepresentations.  Adam answered that Olsen drew the check; that it was certified by complainant bank and delivered by the bank's vice president to him, Adam, for a good and valuable consideration, namely, as part of the sale price of certain real estate sold by Adam to W. O. Olsen; that on the day he received the check, February 28, 1923, he indorsed and delivered the same for a good and valuable consideration to the Arlington Heights State Bank of Arlington Heights,

Illinois, which ever since was and still is the bona fide holder of the check. By amendment the Arlington Heights State Bank was made a defendant and answered, claiming that it received the check on February 28, 1923, from Adam for a valuable consideration without knowledge on its part of any infirmity in the check or defect in the title of Adam, and that it thereby became the holder in due course and was and still is entitled to the payment of the check.

The cause was referred to a master in chancery, who heard evidence and reported (1) that the bill of complaint was properly filed as a bill of interpleader; and (2) that the Arlington Heights State Bank was entitled to the proceeds of the check. The Arlington Heights State Bank filed exceptions to the report in so far as it related to the right of complainant to maintain its bill of interpleader; and the defendant Olsen filed exceptions to the report in so far as it related to the recommendation as to who was entitled to the fund. Upon hearing the chancellor overruled all exceptions to the report and found that complainant was entitled to maintain its bill of interpleader, ordered the payment of the amount of the check into the hands of the clerk, with dismissal of complainant out of the suit, and ordered the clerk to pay $5,000 to the defendant Olsen and the balance to the Arlington Heights State Bank.

Was complainant entitled to maintain its bill of interpleader?

February 9, 1923, defendant Adam made a written contract with defendant W. O. Olsen, agreeing to convey to the latter certain improved premises in Chicago, and the parties thereafter met to close the sale. After adjusting incumbrances, rents, insurance premiums, etc., there was due Adam $10,421.26. As Adam did not then have with him a canceled interest coupon which Olsen wished to have delivered to him, the delivery of the deed and the balance of the purchase

money was postponed until the next day, February 28. On this day Adam went to the complainant bank and delivered to E. H. Olsen, vice president of the bank, the canceled interest coupon note and the deed to the premises, and E. H. Olsen gave Adam the check in question for $10,421.26, drawn by W. O. Olsen upon the complainant bank, payable to E. H. Olsen, who indorsed it to the order of Adam. The complainant bank certified the check. W. O. Olsen testified that he had this done on February 28, 1923. E. H. Olsen testified that W. O. Olsen gave the check to him on February 27, when it was uncertified; that the check was returned to W. O. Olsen, but that the second time he gave it to E. H. Olsen it was certified. Adam testified that he received the check on February 28, and that he and E. H. Olsen went to the cashier of complainant bank and had the check certified. It is a reasonable inference that it was the wish and suggestion of both Olsen, the drawer, and Adam, the payee, that it be certified.

On the evening of the same day Adam indorsed the check and delivered it to the cashier of the Arlington Heights State Bank in pursuance of arrangements he had made with this bank, whereby it agreed to guarantee a letter of credit for $5,000, to apply part of the proceeds of the check on the payment of a note held by it against Adam, to use part to cover an overdraft in Adam's checking account, and also to take up another note. When the Arlington Heights State Bank received the check it made a deposit slip for same, and both check and slip were placed on a spindle, as it was customary the next morning to make entries on the books of all deposits coming in the evening before. The following day, March 1, the Arlington Heights State Bank received a telephone message from the attorney for W. O. Olsen stating that payment of the check had been stopped on the ground that it had been procured by Adam through misrepresentation and

fraud, and a similar message was shortly thereafter received from the Kimbell Trust & Savings Bank.

The equitable remedy of interpleader depends upon and requires the existence of the four following elements:

"First, the same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded; second, all the adverse titles or claims must be dependent on or be derived from a common source; third, the person asking the relief—the plaintiff—must not have nor claim any interest in the subject matter; fourth, he must have incurred no independent liability to either of the claimants,—that is, he must stand perfectly indifferent between them, in the position, merely, of stakeholder." *Morrill v. Manhattan Life Ins. Co.,* 183 Ill. 260, 267; *Platte Valley State Bank v. National Live Stock Bank,* 155 Ill. 250; *Rauch v. Fort Dearborn Nat. Bank of Chicago,* 223 Ill. 507.

It is contended that the complainant cannot maintain its bill for the reason that by certifying the check it incurred an independent liability to pay it. The complainant replies that, where a bank certifies a check at the request of the drawer, before delivery to the payee, the bank thereby does not agree to pay the check but only that the amount thereof will be forthcoming when the check is presented by one lawfully entitled thereto, citing *Bathgate v. Exchange Bank of Chula,* 199 Mo. App. 583; *City of Brunswick v. People's Sav. Bank,* 194 Mo. App. 360, 190 S. W. 60. In both these cases the right to maintain a bill of interpleader under the circumstances is based upon a special provision of the Missouri statute. Illinois has no such statute, and these cases are not applicable.

We hold that complainant is not entitled to maintain its bill of interpleader. If, as we have said, the evidence justified the conclusion that the certification was procured by Adam, the payee, it is immaterial, legally, whether the drawer also requested that it be

certified. The act of the payee or holder in requesting certification amounts to an election on his part to relieve the drawer from liability and to accept the bank instead. "Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liability thereon." Cahill's St. ch. 98, ¶ 209. In *Metropolitan Nat. Bank of Chicago v. Jones,* 137 Ill. 634, which was decided before our present Negotiable Instruments Act was enacted, it was held that by obtaining certification of a check the holders discharged the drawers from liability. To the same effect, see *Wright v. MacCarty,* 92 Ill. App. 120; *Sarantopoulus v. Mid-City Trust & Savings Bank,* 222 Ill. App. 24. When complainant certified the check, at the request of Adam, it became liable, and therefore under the rule above stated was disqualified from maintaining a bill of interpleader.

Even if the certification was procured by the drawer only, under the present Negotiable Instruments Act of Illinois the bank would have incurred such a liability as would bar its bill of interpleader. Cahill's St. ch. 98, ¶ 82, provides that by accepting the instrument the acceptor engages to pay it according to the tenor of his acceptance. "In legal contemplation and effect, the certified check is a certificate of deposit, and the bank owes the amount called for by such a check to the legal holder thereof, payable on demand." *Wright v. MacCarty,* 92 Ill. App. 120. This was the effect of the bank's certificate, and under the statute it thereby agreed to pay the check on demand.

While this precise question has not been decided by the courts of this State, other States having a similar Negotiable Instruments Act have held that where the certification is procured by the drawer, neither the drawer nor indorser of the certified check can stop payment. *Blake v. Hamilton Dime Sav. Bank Co.,* 79 Ohio St. 189; *Nolan v. Bank of New York Nat. Banking Ass'n,* 67 Barb. (N. Y.) 24; *Poess v. Twelfth Ward*

*Bank of City of New York*, 43 Misc. 45, 86 N. Y. Supp. 857. In *Herrmann Furniture & Plumbers' Cabinet Works v. German Exch. Bank*, 87 N. Y. Supp. 462, the drawer of the check had it certified by the bank and delivered to the plaintiff. It was held that, in legal effect, this amounted to payment by the depositor to the payee of so much money and that by this certification the bank lost all power to withhold payment, and for this reason the court denied the bank's motion for leave to file a bill of interpleader. In *Merchants & Planters Bank of Camden v. New First Nat. Bank of Columbus, Ohio*, 116 Ark. 1, 170 S. W. 852, where the check was certified at the request of the drawer, it was held that thereby the drawer lost power to stop payment on it and that the certifying bank was liable thereon. This opinion quotes at length from Mr. Justice Swayne in *Merchants Nat. Bank of Boston v. State Nat. Bank of Boston*, 10 Wall. (U. S.) 604, which is a convincing statement of the importance in business of treating a certified check to all intents and purposes as if it was money, regardless of who procured the certification. These decisions seem to rest upon sound and necessary principles with which we are in agreement. We hold that in the instant case the certifying bank was liable to pay the check on demand, regardless of who procured the certification.

Prior to the enactment of the Negotiable Instruments Act in 1907, the giving of a check constituted *pro tanto* an assignment of the drawer's fund and payment could not be stopped on the check in the hands of a bona fide holder. *First Nat. Bank of Du Quoin v. Keith*, 183 Ill. 475. The Negotiable Instruments Act changed this by providing that a check does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, "and the bank is not liable to the holder unless and until it accepts or certifies the check." Section 210, Negotiable Instruments Act

[Cahill's St. ch. 98, ¶ 210]. This fixes the liability of the instant bank.

From the foregoing considerations it follows that the complainant was not entitled to file a bill of interpleader, and the chancellor should have sustained the exceptions to the master's report of the defendants, Adam and Arlington Heights State Bank, and dismissed the bill.

This conclusion is sufficient to dispose of the cause, but we have further examined the record to ascertain the merits and are of the opinion that the decree was erroneous in awarding any amount of the fund to defendant, William O. Olsen. When the sale of the premises by Adam to Olsen was consummated Adam made an affidavit to the effect that there were no persons in possession who had or claimed any right, title or interest in the premises except as tenants as shown by an attached list. The tenancies of a Mr. Levy and of a Mr. Williams were listed as month to month tenancies. After the exchange of the deed and the check Olsen discovered that these tenants claimed leases for a longer fixed term. This was reported to Adam, who, after interviewing Levy and Williams to ascertain the character of their claims, reported to Olsen the result and, while not admitting the validity of these claims and asserting his belief that they were baseless, in view of their evident intention to make trouble about delivering possession, offered to cancel the entire sale and take back the property and return to Olsen all of the consideration he had paid and reimburse him for his expenses and attorneys' fees. Olsen declined this, unless Adam would in addition pay him $5,000, which Adam refused to do. Subsequently the alleged right of Levy was adjudicated against him in the municipal court and the Appellate Court. The rights of Williams after trial, the regularity of which is doubtful, were determined in favor of Williams, who

shortly thereafter became insolvent and abandoned the premises, Olsen taking possession.

It is elementary that in an action to recover for fraud and deceit in a sale, the purchaser refusing to rescind the sale, it must be proven that the party making the representations knew they were false when made and made them with the intention to deceive. *Cantwell v. Harding*, 249 Ill. 354. Adam's representations as to Levy were not false. Williams' claim was very doubtful, and there is no evidence that Adam knowingly made any false statements about it.

We agree with the conclusion of the master that Adam did not perpetrate a fraud upon Olsen.

We also, upon the facts relating to the deposit of the check with the Arlington Heights State Bank, agree with the master in finding that it was a holder of the check in good faith and for a valuable consideration.

There is no basis in the record to warrant an award to Olsen of $5,000, or any other sum, as damages. The master properly found against his claim, and the chancellor was in error in sustaining his exceptions thereto.

We are of the opinion that the merits are with the Arlington Heights State Bank and the decree should have found it entitled to the entire amount of the fund, but for the reasons first above stated we hold that the bill was improperly filed and it should be dismissed. We therefore reverse the decree and remand the cause with directions to dismiss the bill.

*Reversed and remanded with directions.*

MATCHETT, P. J., and JOHNSTON, J., concur.