Frank Lickus and Antoinette Lickus, Appellants, v. Joseph H. O'Donnell and Helen E. O'Donnell, Appellees.

Gen. No. 9,931.

Heard in this court at the October
term, 1943.                          Opinion filed December 28, 1943.

GEORGE S. McGAUGHEY, of Waukegan, for appellants.

MASON, BILLS & MASON, of Waukegan, for appellees.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This is an action for fraud and deceit brought by appellants. Appellees were owners of Lot 1 in Block 15, in Frederick H. Bartlett's North Shore Estate, a subdivision adjacent to the city of Waukegan. They had this lot listed for sale with the real estate firm of Noll & Noll, in Waukegan. Appellants' son, Charles, was interested in the automobile junk business. He desired a business location on Belvidere Road, along which the subdivision lay. He went to see the above named real estate brokers about obtaining such location. They took the young man out along this road and where the above subdivision is located. Charles states they came to a place which was marked with a sign, "For Sale—Noll & Noll," and that the brokers advised him this was the lot they had for sale. He says he "didn't care much" for the lot shown him; that it was low and wet; that he told the brokers he would prefer a lot upon higher ground, and would be willing to pay $200 more for such a location. He states he advised the brokers that he would wait a few days to see if they could find him a lot further

up on the hill; and that if such a location could be found, he would much prefer it.

The situation terminated in appellants, parents of Charles Lickus, purchasing through the said real estate brokers, Lot 1 in Block 15 of the above mentioned subdivision. Mr. Frank Lickus paid the purchase price therefor to the brokers, who in turn, delivered to him a deed from appellees to said lot. Subsequently, they erected a sheet metal garage on the lot which Charles claims the brokers showed him as the one they had for sale. Some months after the garage had been built, appellee, Joseph H. O'Donnell, in passing the garage, stopped and inquired of Charles if that was supposed to be the lot his father had purchased from him, and upon being advised by Charles that it was, Mr. O'Donnell stated there must be a mistake because the lot he had owned was up on higher ground. He told Charles that he should look into the matter. This was the first time Charles and Mr. O'Donnell had met. The appellees had never met appellants. The result was that appellants discovered they had erected their garage on Lot 1 in Block 14, instead of on Lot 1 in Block 15, which was the lot they had purchased from appellees. Thereafter, appellants moved the garage to Lot 1 in Block 15, which was about 150 yards distant, and purchased another lot adjoining Lot 1 in Block 15, on the west.

This suit was instituted by appellants for fraud and deceit, seeking to recover damages from appellees occasioned by the erection of the garage upon the wrong lot and the removal thereof to the correct location.

At the close of plaintiffs' evidence, on motion of appellees, the court entered judgment for the defendants. Plaintiffs bring this appeal.

Appellants cite three cases in support of their position. The first case referred to is that of *Hahl v.*

*Brooks,* 213 Ill. 134. In that case, the vendor participated in a deliberate fraud upon the purchaser by concealing from him the existence of a mortgage on the premises. There is nothing in this case to bring the parties into a similar situation. The next case referred to is that of *Owens v. Union Bank of Chicago,* 260 Ill. App. 595. That was a suit to rescind a purchase contract. It was part of the written contract that the lot purchased would be located in Calumet City, whereas it was not. The third case is that of *Nelson v. Pederson,* 305 Ill. 606. This was also a suit for cancellation of purchase contract. The purchaser received from the vendor a preliminary contract for a certain described lot. When the final and completed contract was prepared by the vendor, a different lot number was inserted. The court there found that the vendor had signed the first contract of sale, and that such a mistake was ground for rescinding the purchase contract, where the purchaser, without negligence, had entered into same through a material mistake of fact (p. 610).

In the present case, we do not find where appellees had anything to do with the sale of their lot to appellants, or in any way participated therein. When Mr. Lickus advanced the purchase price to the brokers, they secured the deed from appellees and delivered same to appellants.

With respect to the charge of fraud and deceit, appellees urge the rule that to recover for same in a sale, it must appear the party making the representations knew them to be false and made them with the intent to deceive.

Fraud and deceit usually embody some design or motive to deceive a person to his injury. It therefore generally originates through some plan or scheme to practice deception, and the common purpose of such acts and dealings is to obtain a profit or advantage to an-

other's injury, although benefit to the guilty part is immaterial as the gravamen of the action is injury to the plaintiff and not benefit to the wrongdoer. The very nature of the term "fraud and deceit" contemplates a state of mind affirmatively operative with a secret and furtive design, based upon a motive of self-interest, ill will or some other ulterior purpose. The rule is firmly established that the existence of a fraudulent intent or an intent to deceive, is an indispensable element to the successful maintenance of an action for fraud and deceit. *Merwin v. Arbuckle,* 81 Ill. 501 (cases cited); *Tone v. Wilson,* 81 Ill. 529, 533, 534; *Schwabacker v. Riddle,* 99 Ill. 343, 348; *Kimbell Trust & Savings Bank v. Olsen,* 239 Ill. App. 609, 617; *Cantwell v. Harding,* 249 Ill. 354; *Crocker v. Manley,* 164 Ill. 282.

Three witnesses testified on behalf of appellants. They were Charles Lickus, a young friend named Carl Geske, who was with him when they made the trip with the brokers to view the property, and Mr. Frank Lickus. We find no circumstances in the testimony tending to prove fraud and deceit on the part of appellees. There is nothing tending to prove they had any notice or knowledge the brokers had undertaken to exhibit their lot to Charles, or that in doing so, they had shown him the wrong lot. Charles was dissatisfied with the location shown him and expressed a desire for a lot on higher ground and a willingness to pay more for same. So we do not find a situation where appellees by plan or design caused to be exhibited to Charles a lot which was satisfactorily situated, and conveyed a less favorably situated lot. Nor do we find the question of concealment of lien or mortgage, nor any fault in the title.

By way of observation, we might say that this case involves the question of identity of property, rather than active fraud and deceit. It is generally con-

sidered on the question of identity of property, that where a vendor points out a lot or certain tract to a purchaser, he is bound to do so correctly, and where the purchaser is ignorant of the location, he has a right to rely upon the positive statement and representation of the vendor and to hold him responsible. However, cases so holding are based upon statements made by the vendor to the purchaser. *Jack v. McConkey,* 208 Ill. App. 84; *Lawson v. Vernon,* 38 Wash. 422, 80 Pac. 559, 107 Am. St. Rep. 880; *Lee v. Bielefeld,* 176 Wis. 225, 186 N. W. 587. Reference has been made to the West Reporter System—Digest Title— Fraud, Key No. 4. Also see 37 C. J. S., par. 59, p. 343; and par. 52, p. 308.

In this case, appellees and appellants were strangers. Appellees had nothing to do with exhibiting or pointing out their lot to appellants. They had nothing to do with the circumstances surrounding appellants' purchase of the lot. The land was divided into blocks and lots with the respective blocks and lots designated by number, according to a plat. Charles says he did not look at the plat. Appellants knew they were buying Lot 1 in Block 15. This lot belonged to appellees. The deed presented to the vendors by the real estate brokers for execution conveying their lot to appellants, contained the proper legal description. There was nothing about the transaction to put appellees upon notice that appellants might have viewed some other lot in the subdivision, or how many lots they might have viewed before selecting that belonging to appellees. Therefore, we find that the transaction in this case was free from any representations by the vendors to the purchasers. Under such circumstances, we are not of the opinion appellees can be charged with liability.

The judgment of the trial court is affirmed.

*Judgment affirmed.*