*In re* ESTATE OF ALBERT C. McGILL, Deceased.—(DONALD L. VORE, Petitioner-Appellee, *v.* FIRST NATIONAL BANK AND TRUST CO. OF BELVIDERE, n/k/a United Bank of Belvidere, N.A., Adm'r of the Estate of Albert C. McGill, Respondent-Appellant.)—(FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF BELVIDERE, Respondent-Appellee.)

Second District No. 76-321

Opinion filed November 16, 1977.

Traver W. Ellis, of Strom, Strom, Oakley & Ellis, of Belvidere, for appellant.

O'Sullivan & O'Sullivan, of Belvidere, for appellee Donald L. Vore.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Petitioner, Donald L. Vore, brought an action to recover funds in an account in the name of Albert C. McGill, at First Federal Savings and Loan Association of Belvidere (hereafter First Federal). The trial court rendered judgment for the petitioner, and respondent, First National Bank and Trust Company of Belvidere, administrator of McGill's estate, appeals.

The stipulated facts reveal that on March 14, 1975, Albert C. McGill and petitioner executed an application for an account to be held in joint tenancy with the right of survivorship at First Federal. On that same day, McGill, who was approximately 86 years old and a resident of a nursing home, drew a sight draft on the Addison Savings and Loan Association (hereafter Addison), located in Addison, Illinois, where he had an account. The sight draft was made payable to First Federal. The draft and the accompanying letter, also dated March 14, was forwarded to Addison by First Federal on that same day. McGill died on March 18, 1975. On March 21, 1975, Addison forwarded to First Federal a draft in the amount of $15,997.25 which was drawn on the account of Albert C. McGill and which closed his account at Addison. The draft was received by First Federal on March 25, 1975. On that date First Federal deposited the draft to the account of Albert C. McGill. No funds were ever deposited in the joint account of Albert C. McGill and petitioner.

In addition to the stipulated facts, there was testimony from David Beasley, manager of First Federal, that when he was informed of McGill's death, he contacted Addison, on March 20, 1975, where he was informed that Addison was holding the account for an interest payment at the end of the quarter. He stated that he placed a second call to Addison on that same day to inform them that McGill was deceased and that they should proceed at their own conscience. Beasley also testified that it was the regular business practice that mail is posted on the date it is dated.

Following the arguments of counsel, the trial court stated:

"* * * the Court rules that the non-negotiable sight draft was an assignment of the account which the Addison Savings and Loan Association was obliged to immediately accept or reject; that the evidence is that the Addison Savings and Loan did not reject the sight draft and the Court will, taking into account the usual affairs of business, take judicial notice of the fact that a document mailed from Belvidere, Illinois, would normally have arrived at a post office sixty miles away within four days. The fact that it did so

arrive is further substantiated by the testimony that the Addison Savings and Loan advised that they were holding the payment when inquiry was made and there is no evidence whatsoever to show that the document did not leave the Addison Savings and Loan Association within the normal course of time. * * *"

The trial court further stated that Addison was under a legal obligation during McGill's lifetime to transmit the money to First Federal; that First Federal in turn was under a legal obligation to deposit the funds when it received them into the joint tenancy account of McGill and the petitioner, which the court found had been established. The trial court then ruled that petitioner was the sole owner of the proceeds in question.

Respondent contends that the trial court erred in holding that the sight draft drawn by McGill on March 14, 1975, constituted an assignment of the account held by McGill at Addison. Respondent relies on the Uniform Commercial Code, section 3—409 (Ill. Rev. Stat. 1975, ch. 26, par. 3—409), which provides in pertinent part:

"(1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it."

■■ The respondent's position on this issue must fail for two reasons. First, the trial court specifically found that the evidence showed that Addison did not reject the sight draft; nor did respondent offer any evidence that the sight draft was rejected by Addison. The acceptance is further indicated by the fact that when the inquiry was made as to the status of the account, Addison informed First Federal that the account was being held for an interest payment, and then was mailed the next day. Further, though Mr. Beasley informed Addison of McGill's death he cautioned them to do only what they thought best, thereupon Addison forwarded the draft closing McGill's account to First Federal the very next day. Such evidence without any conflicting testimony to the contrary provided a sufficient basis for the trial court to find that Addison had accepted the sight draft and a valid assignment of McGill's account had taken place.

Secondly, it is most interesting to note the comment to section 3—409 (Ill. Ann. Stat., ch. 26, par. 3—409, Uniform Commercial Code Comment, at 269 (Smith-Hurd 1963)), which states in pertinent part:

"1. As under the original sections, a check or other draft does not of itself operate as an assignment in law or equity. The assignment may, however, appear from other facts, and particularly from other agreements, express or implied; and when the intent to assign is clear the check may be the means by which the assignment is effected."

It is our opinion that the facts of this case constitute the type of assignment contemplated by the above comment. Reviewing the facts and the circumstances surrounding McGill's application with petitioner for an account in joint tenancy at First Federal and the drawing of the sight draft which closed his account at Addison, we are of the opinion that the record clearly reflects the intention of McGill that the sight draft act as an assignment of his account at Addison, and an assignment thereof was effectively made. At this point McGill had performed every act necessary to create the joint account.

The case of *Cook v. Lewis* (1912), 172 Ill. App. 518, relied on by respondent is distinguishable from the present case. In *Cook*, a doctor was given a check by a patient, Koch, 10 days before Koch's death. Seven hours after Koch's death, the doctor presented the check to the bank for payment and informed the bank of Koch's death. The bank paid out on the check, and the administrator of Koch's estate brought suit against the doctor for the money. The trial court found in favor of the administrator and the doctor appealed. On appeal the court, after examining the authorities, affirmed the trial court, holding that a check does not of itself amount to an assignment of funds in an account. In *Cook*, however, the check was not presented until after the death of the drawer, Koch, whereas here, the trial court specifically found that the legal obligation to transfer the funds into McGill's joint account occurred during McGill's lifetime. Also, there are the additional circumstances surrounding the making of the application for the joint tenancy account and the drawing of the sight draft by McGill that indicate the intent to assign the funds in the account at Addison.

■■ Respondent contends that under the facts of this case Albert McGill was attempting to make a gift of his funds at Addison to the petitioner and that therefore the law of gifts applies here. While respondent concedes that the facts here show that McGill possessed the donative intent to make a gift to petitioner, he argues that petitioner failed to show a complete delivery of the gift before the death of McGill, an essential element of a valid gift. *Pocius v. Fleck* (1958), 13 Ill. 2d 420, 150 N.E.2d 106.

■■ As was pointed out above, it was the finding of the trial court that the sight draft arrived at Addison during McGill's lifetime and that Addison was legally obligated to transfer the funds to First Federal at that time. The trial court also determined that a joint tenancy account had been established in the names of McGill and petitioner, and the funds, when they were received from Addison, should have been placed in that account rather than in the account under McGill's name only. The joint tenancy thus created, the presumption arises that the fund was a gift to petitioner as the surviving joint tenant, a presumption which can be

overcome only by clear and convincing evidence of a lack of donative intent. (*In re Estate of Stang* (1966), 71 Ill. App. 2d 314, 218 N.E.2d 854.) Respondent having failed to overcome the presumption arising from the creation of the joint tenancy, a valid gift was therefore made during McGill's lifetime.

On the basis of the above, therefore, we affirm the judgment of the trial court.

Affirmed.

GUILD and SEIDENFELD, JJ., concur.